## Sugar River Bank *v.* Fairbank & a.

When the presentation of a claim against an estate in the insolvent course, within the time limited by the statute, has been prevented by the fraudulent concealment of the claim by the deceased, a bill in equity may be maintained to obtain satisfaction out of the surplus in the hands of heirs and distributees, if commenced promptly after the discovery of the claim.

A delay to commence proceedings for four years after the discovery of the claim, would be altogether too long, and ordinarily, the proceedings should be commenced within a few months, in analogy to the time allowed for the presentation of claims to the commissioners of insolvency.

The bill is as follows :

"The Sugar River Bank a corporation duly established by law, doing business at Newport, in said county of Sullivan, complains against George H. Fairbanks, William Nourse, Charles E. Wheeler, Azuba C. Whitney, George F. Whitney, Martha M. Kibby, William B. Kibby of Newport in said county, Sarah M. Currier and John Currier of East Salisbury, in the county of Essex and state of Massachusetts, Huldah W. Wheeler, and Mason Wheeler of Northfield, in the state of Minnesota, and Prudence S. Sargent and Peter ·Sargent of Lebanon, in the county of Grafton, that Paul J. Wheeler, late of said Newport, deceased, was on the 19th day of February, A. D. 1853, duly appointed cashier of said Sugar River Bank, and accepted that trust; and on the 10th day of June A. D. 1853, entered upon the duties of that office, and gave a bond in due form, of that date, to said bank, in the penal sum of twenty thousand dollars, to the payment of which, to said bank, he bound himself and his heirs with condition among other things, that the said Paul J. should

well and faithfully discharge and perform all the duties of cashier of said bank, and render an account and pay over to said bank all the moneys and credits that should come into his hands by virtue of his said office, and make no default in any duties. And also on the 27th day of May 1862, said Paul J. gave to said bank an additional bond in the like penal sum and with the like conditions with the bond above described, bearing date March 1862, in and by which he in like manner bound himself and his heirs to the payment of the penalty named within; and both of which said bonds the plaintiff produces here in court, the dates whereof are as aforesaid. And said Paul J. continued to hold the office and trust of such cashier of said bank under said appointment from said 10th day of June, 1853, till the time of his decease on the 19th day of September, A. D. 1862, as hereinafter mentioned.

That the capital stock of said Sugar River Bank, as established by law, was fifty thousand dollars, and no more; that on the 10th day of June A. D. 1853, and on divers other days and times between that day and the 19th day of September A. D. 1862, the said Paul J. Wheeler unlawfully and fraudulently issued and put into circulation, of the bills of said bank, the sum of six thousand and three hundred dollars over the above sum of fifty thousand dollars which said bank might lawfully and of right have in circulation at any one time, and fraudulently converted and appropriated said sum of six thousand and three hundred dollars in the bills of said bank, so fraudulently issued and put into circulation to his own use, and never accounted for or paid over the same, or any part thereof to the said Sugar River Bank; and said bills of said Sugar River Bank, so fraudulently issued and put into circulation by said Paul J., as aforesaid, have been presented for payment and redemption to said bank by the various holders thereof, and said bank has been obliged, as bound by law, to pay, take up and redeem the same.

That on the 19th day of September, A. D., 1862, the said Paul J. Wheeler died intestate, leaving no lineal descendants but Cyril Wheeler, late deceased, his father, and the said Sarah M. Currier, then Sarah M. Wheeler, his widow. And on the 29th day of September, A. D. 1862, letters of administration upon the estate of said Paul J. Wheeler, were duly granted, jointly to the said Sarah M. Currier, by her then name Sarah M. Wheeler, and to Morrill S. Wheeler, who jointly accepted and entered upon the duties of said trust; that on the 29th day of October, A. D. 1862, it was decreed by the probate court, for said county, of Sullivan, that said estate should be administered as insolvent, and Edward Wyman was then duly appointed commissioner to examine and allow the claims of creditors against said estate, and such proceedings were thereafterwards had, that said commissioner made his report to the Judge of Probate for said county, and the same was on the 24th day of June, A. D., 1863, duly accepted by said Judge of Probate.

That by the fraudulent practices of the said Paul J. Wheeler, while in life, the fact of said fraudulent over issue of the bills or

said bank by said Paul J. Wheeler, and the conversion of the same to his own use as aforesaid, was wholly concealed from the knowledge of the said plaintiff and was wholly unknown to the said plaintiff until long after the acceptance of said report of said commissioner as aforesaid, and till long after the time to which said commission might by law be extended, to wit: until after the 29th day of October, A. D., 1864, and for the reason that said fraudulent over issue, circulation and conversion of said bills were so wholly concealed and unknown to the plaintiff the claim of the said plaintiff against the estate of said Paul J. Wheeler to be indemnified against the loss and expense to the said plaintiff, resulting therefrom as aforesaid, was not presented to said commission for allowance, and the same constitutes no part of the claims presented or allowed by said commissioner against said estate; so that by reason of said fraudulent concealment by said Paul J., as aforesaid, the plaintiff said claim was a demand which could not be presented to the commissioner on said estate.

That said Paul J. Wheeler died seized in his demesne as of fee, of the following real estate, to wit: One piece of land, being the homestead of said Paul J., situate in said Newport, then of the value of three thousand five hundred dollars; also, one other piece of land situate in said Newport, called the Hatch place, on which his father, the said Cyril Wheeler, deceased, then resided, then of the value of two thousand five hundred dollars; bounded, north by land of Amasa Edes and land of Edmund Burke; east by land of Edmund Burke, Main street, and land of Henry G. Carlton; south by land of said Carlton and land of Mason Hatch; west by Sugar River. Also, one other piece of land in said Newport, called the Robinson place, lying on the e· s·; mount·in, so-c·lled, then of the value of two hundred dollars; also, one other piece of land, situate in Grantham, in said county, then occupied by one S. S. Palfrey, then of the value of two hundred dollars.

That after the payment of all the claims against said estate and the expenses of the administration of the same incurred, there was remaining of personal estate belonging to the estate of said Paul J. the sum of nine thousand and two hundred dollars, of which said sum there was paid over to said Cyril Wheeler, while in life, and he received to his own use the sum of four thousand and six hundred dollars, and the remainder thereof, being the like sum of four thousand and six hundred dollars, the said Sarah M. Currier retained and still retains in her own hands. That afterwards, in pursuance of the request of the said Paul J., made near the time of his decease, and without other authority or consideration the said Cyril Wheeler delivered and paid over to said Azuba C. Whitney, Martha M. Kibby, Huldah W. Wheeler, Prudence S. Sargent, and Charles E. Wheeler, of the said sum of four thousand and six hundred dollars, so received by said Cyril as aforesaid, each the sum of five hundred dollars, and they received and still retain the same in their hands.

That the said Cyril Wheeler in his life time entered into possess-

ion of the said Hatch place, and the said.Robinson land, and the said piece of land in said Grantham, claiming title thereto as heir of, and by descent from said Paul J. Wheeler, and continued to hold the same claiming title thereto as such heir until his decease, as hereinafter mentioned.

That on the 5th day of June, A. D., 1863, the said Sarah M. Currier, by her then name of Sarah M. Wheeler, undertook by a warranty deed in common form to convey to the said William Nourse, the homestead farm aforesaid, belonging to said estate of Paul J. Wheeler, and of which he died seized as aforesaid, for the consideration then paid by said Nourse to said Sarah M., of three thousand five hundred dollars, and said Nourse then went into possess of the same and still continues to hold the same claiming title thereto by virtue of said deed from said Sarah M.

That on, or about, the the 5th day of October, A. D., 1864, the said Sarah M. married, and became, and still, continues to be, the wife, of the said John Currier, whereby the trust, ·granted her, as administratrix, of the. said Paul, as aforesaid, became, by law, extinguished, and her power, and authority, as such ceased; and, on the 6th day of January, A. D., 1866, the said Morrill S. Wheeler, absconded, and went to parts unknown, to the plaintiff ; and, has not since been heard of, by them, and, no further administration on the estate, of said Paul J. Wheeler, has ever been granted.

That, neither said Sarah M., and Morrill S., nor, either of them, have ever settled their accounts, as administrators, of said estate ; and, no decree of distribution of said estate, or, any part, thereof, was ever made, by the judge of probate, or, other lawful authority ; and, the said plaintiff, is about to apply to the judge of probate, for said county of Sullivan, for the appointment of an administrator upon the estate of said Paul J. Wheeler, yet unadministered, which said administrator, when so appointed, the said plaintiff prays, may be made a party defendant, to this bill of complaint.

That the real and personal estate above described still belongs to the estate of said Paul J. Wheeler, late deceased, and has never been administered or lawfully disposed of by the said administrators of the estate of said Paul J., or otherwise ; and the same is all the estate that now remains unadministered belonging to the said estate of said Paul J.

That on the 21st day of July, A. D., 1867, the said Cyril Wheeler died, and administration upon his estate has been granted to the said George H. Fairbanks, who has accepted· and entered upon the duties of that trust. And by virtue of a license by him obtained from the judge of probate for said county, he as such administrator of the estate of said Cyril Wheeler, deceased, has advertised and given public notice that he would sell at public auction on the 21st day of November, inst., the said Hatch place and the said Robinson land, and threatens to sell said lands in pursuance thereof as assets belonging to the estate of said Cyril Wheeler, deceased, and to administer the same, and the proceeds thereof as such assets,

That the said Azuba C. Whitney is now the wife of the said Geo.
F. Whitney, said Martha M. Kibby is now the wife of the said
William B. Kibby, the said Huldah W. Wheeler is now the wife of
the said Mason Wheeler, the said Prudence S. Sargent is now the
wife of Peter Sargent, and they together with the said Charles E.
Wheeler are children and heirs at law of the said Cyril Wheeler,
deceased, and as such heirs claim to hold and enjoy the aforesaid
Hatch place, Robinson land, and the said land in said Grantham, or
so much thereof as shall remain after payment of the debts against,
and expenses of administration of the estate of said Cyril.

That the said plaintiff believes, that the said George H. Fair-
banks intends to sell the said Hatch place and Robinson land and to
appropriate the avails thereof to the payment of the debts against
the said estate of Cyril Wheeler deceased, and the expenses of
the administration of said estate and what then shall be remaining
after the payment of such debts and expenses, to distribute and pay
over the same to the aforesaid heirs at law of said Cyril Wheeler,
deceased.

The said plaintiff therefore, prays that the said claim against the
estate of said Paul J. Wheeler, deceased, described as aforesaid,
may be decreed to be paid out of the estate of said Paul J. Wheel-
er, yet unadministered, and in the hands of the several defendants,
above-named, including the real and personal estate, above described.
That said unadministered estate of said Paul J., may be decreed to
be administered by such administrator or other person, as may be
appointed, either by the judge of probate, for said county of Sulli-
van, or by this honorable court, and that the said several defendants
may, be ordered and decreed to pay and deliver over to such admin-
istrator, or other person, appointed by the court, the estate belong-
ing to the estate of said Paul J. Wheeler, deceased, now in their
respective hands, as aforesaid; and, that such administrator, or oth-
er person, may be ordered decreed and enjoined, out of the same
to pay and satisfy, the aforesaid claim, of the said plaintiff, togeth-
er with the lawful interest thereon, and damage for the detention of
the same ; that a writ, or order. of injunction may be issued, to re-
strain the said George H. Fairbanks, from selling the said Hatch
place, and Robinson land, or, any part thereof, or any other part of
the estate belonging to the estate of the said Paul J. Wheeler, de-
ceased, and for such other relief as may be just.

A. Edes,          *Sugar River Bank, by their Att'y,*
A. S. Wait, } *Solicitors.*          A. Edes."

The defendants demurred to the bill, for causes that appear in the
opinion of the court.

*Cushing,* for defendant.

The bill after stating the death of Paul J. Wheeler, the claim of
the plaintiff against his estate, the proceedings in the administration,
and the property remaining after payment of all debts proved before

the commissioner, alleges that the plaintiff's claim could not be proved before the commissioner by reason of its fraudulent concealment by the intestate, and prays that the estate may be further administered, and the claim paid out of the remaining property.

The statute in force at the time of these proceedings, provided that all claims not presented before the commissioner, should be absolutely barred as against the estate.

The bill states the due appointment of the commissioner, the proceedings before him, that the time has passed, beyond which the commission cannot be extended, and does not suggest any irregularity or insufficiency in those proceedings.

If, then, an administrator were appointed, and further administration attempted, it seems plain that these plaintiffs could derive no benefit from it.   The commission could not be extended, and the estate being settled in the insolvent course, the claim not having been presented to the commissioner is absolutely barred.

Neither could this claim be maintained against the heirs of Paul J. Wheeler.   For the statute only saves the remedy against the heirs in those cases where the claim could not be allowed by the commissioner, for the reason that they depended upon a contingency which had not yet happened.   The plaintiff's claim did not depend upon a contingency.   If Paul J. Wheeler made an over issue of bills of the bank and converted those bills to his own use, he thereupon became liable to the plaintiff for the amount.   There was nothing contingent about it.   It was at once absolute and complete.

It may be further said that so far as the real estate is concerned, the administrator would have no right to intermeddle with it unless it were needed to pay debts.   It would fall at once to the heirs, subject to be sold by the administrator, if needed to pay debts.   For this purpose no proceedings in chancery are needed.   If there were any debts which the administrator ought to pay out of the proceeds of the land he would get, license from the probate court and sell the estate, but no proceedings in chancery would be necessary.

The bill is then completely nugatory, unless the court of chancery can interpose here and change the whole law in regard to the settlement of estates in the insolvent course.   It seems to us impossible that the chancery court could have or assume the power to do this.

*Amasa Edes, for plaintiff.*

By the demurrer, the defendants admit that Paul J. Wheeler unlawfully and fraudulently issued and put in circulation bills of the bank to the amount of six thousand and three hundred dollars of over issue, and fraudulently converted and appropriated the same to his own use, and never accounted for or paid over the same or any part thereof to the bank, and that the bank, as bound by law, has been obliged to pay, take up and redeem the same.

That by the fraudulent practices of said Paul J. Wheeler these facts were concealed from the knowledge of the plaintiff, and were

wholly unknown to them till after the administration on his estate was closed; that the defendants have assets of his estate, both real and personal, after the payment of all his other debts, to a large amount; that the real estate of said Paul J., in Nourse's hands, was conveyed to him by the heirs, before the close of the time given by the commissioner on his estate, for creditors to prove their claims before him.

We do not deem it necessary, to offer any argument to show that the claim of the plaintiff is well founded in equity. Has, then, the court jurisdiction and power to furnish a remedy in this case?

I.   The court can hear and determine in case of fraud or accident. General Statutes, ch. CXC., sec. 1, and, under the general prayer, may grant such relief as the case stated in the bill will justify. *Stone* v. *Anderson*, 26 N. H. 507; *Bresby* v. *Littlefield*, 31 N. H. 193; *Treadwell* v. *Brown*, 44 N. H. 552.

As to the first point in the defendants' brief, that " if further administration of Paul J. Wheeler's estate were attempted, the plaintiff could derive no benefit, &c., from it, and that the claim is absolutely barred," we suggest that though at law, we could not avail ourselves of it, that this court might make use of such administration in furtherance of equity in this case, although it might be more advisable to use its own officers or appointees, to execute any decrees or measures it may deem appropriate, and we shall state our views as to the claims being barred in connection with the second point in the defendants' brief, " that the claim is barred as against the heirs of Paul J. Wheeler."

1st.   At common law, independent of the statute, heirs, in cases like this, were liable; also, the statute of 3rd Wm. & Mary has been adopted in this state. *Ticknor* v. *Harris*, 14 N. H. 272; *Hall* v. *Martin*, 46 N. H. 337.  " The additions provided by our statutes to the remedy against the administrator, must be regarded as cumulative."

2d.   Only such claims as might have been presented to the commissioner, and were not presented to him, are barred. Comp. St. 417 § 16.   This section says nothing about " for the reason that they depended upon a contingency which had not yet happened." There is no reference in that section to the 14th section of the same chapter, and was, probably intentionally, made broader than the 14th section.

3d.   The plaintiff's claim could not be presented to the commissioner.   The fraudulent concealment of a fraudulent claim is tantamount to a contingent claim. *Way* v. *Cutting*, 20 Rep. 127; *Bowman* v. *Sanborn*, 18 N. H. 205; *Douglass* v. *Elkins*, 28 N. H. 26, 32. " Whether such fraud takes the case out of the statute, or whether it constitutes a case not within the statute, because, one not within the contemplation of the legislature, and so not within the scope of the statute, is not particularly determined." *Bowman* v. *Sanborn*, 18 N. H. 209.   The plaintiff's claim involves secrecy and fraudulent concealment in its inception by Paul J. Wheeler, and the fraudulent

concealment of it by him, must have been by subsequent acts continued by him from time to time during most of his subsequent life ; fraudulent concealment being a part of the original fraud on which the plaintiff's claim is founded, the discovery of the fraud, may well be considered as a contingency on which the plaintiff's claim depended.

4th. Lands in the hands of heirs, may be charged in equity for the fraud of the ancestor. *Pearson* v. *Morgan*, 2d Bro. Ch. Rep. 385, 388, quoted in note 1, Story's Equity, Pl. page 219. In order that "a remedy at law must not only be adequate, but clear and not doubtful." *Lake Co.* v. *Worster*, 29 N. H. 445.

A bill of equity may be sustained, if the court has jurisdiction of any substantial and essential part of the complaint. (Same as above.)

BELLOWS, C. J. The first question is, whether the plaintiff has now any remedy against the estate of Paul J. Wheeler in the hands of the administrator. It is stated in the bill, that administraton upon the estate of said Wheeler was granted September 29, 1862 ; that a decree of insolvency was passed October 29, 1862, and a commissioner appointed who made his report, and the same was accepted by the judge of probate, June 24, 1863 ; but that the plaintiff's claim was not presented to the commissioner, for the reason that, by the fraudulent practices of the said Wheeler, it was wholly concealed from the plaintiff until after the time to which the commission might by law be extended, and it is not stated that any application for an extension had ever been made.

Under the law of July 2, 1822, N. H. Laws 1824, p. 142, it has been decided, that no suit could be maintained against an executor or administrator of an insolvent estate, except by way of appeal from the decision of the commissioners. *Judge of Probate* v. *Brooks*, 5 N. H. 82. There, the suit was upon a bond against the heirs and devisors of Brooks, who had signed the bond as security for one Dwight, who was administrator of the estate of one Evans. The estate of Brooks was administered in the insolvent course, and the claims against it paid out of the personal property, and the real estate was divided among the defendants according to the will. The court held, that so long as there was a remedy against the executor or administrator, an action against the devisees could not be sustained, but that such remedy did not exist in that case, and thereupon the plaintiff was entitled to recover of the devisees. The same doctrine was held in *Ticknor* v. *Harris, & a.*, 14 N. H., 272.

This statute of 1822, is entitled an act regulating the settlement and distribution of insolvent estates. It provided for the appointment of commissioners, to adjust and allow the claims against estates, and for an appeal from their decisions, and by section seven, provided that all demands against such estates exhibited to the commissioners and rejected by them, and not prosecuted to judgment in the manner by this act prescribed, and all demands against such estate, which, by virtue of this act, might have been exhibited to and allowed by them, but which were not so exhibited and allowed, shall

be forever barred; and no action against any executor or administrator of any such estate shall ever be sustained, otherwise than in this act is provided. Unless the law of 1822 has been changed, these decisions are decisive of the question here, so far at least as suits at law are concerned. That law expressly provides, that no action shall be sustained against an executor or administrator of an insolvent estate otherwise than is provided in that act, and that if any is commenced, it shall be discontinued, where the estate is represented insolvent, and it was upon the ground, that no such action as was brought in those cases, was provided for in the act, that these decisions went.

Upon a careful examination of the subsequent statutes, we think no substantial change has been made. By sec. 8 of ch. 161 of the Revised Statutes, it is enacted that "no action shall be commenced or prosecuted against an administrator, where the estate is decreed to be administered as an insolvent estate, but the cause of action may be presented to the commissioners and allowed, with costs of any action pending at the time of such decree." The same provisions are found in the Comp. St. ch. 170, sec. 8, and they are also retained in the General Statutes, ch. 179 § 8. By ch. 173, § 16, of the Revised Statutes, it is provided that "all demands against any estate which might be presented to the commissioners, and were not so presented; and all demands so presented and rejected, and not allowed upon appeal as aforesaid, shall be forever barred." The same section is found in the Comp. St., ch. 173, § 16, and in General Statutes, ch. 181, § 16. It is obvious that the present law, is in substance, the same as the law of 1822; the only difference being that in the present law, the prohibition of writs against executors and administrators, is not, in terms qualified as it is in the law of 1822, but the effect is the same; and the provisions of the law of 1822, are separated, and go into different chapters in the present statutes. The sense, however, is not changed.

Our opinion then is, that the remedy against the estate of Paul J. Wheeler is gone, unless in some form it is saved by the fraudulent concealment of the claim, by the intestate. The policy of these enactments very clearly is, to promote the speedy settlement of estates, and to that end, all claims that can be presented within the time limited, must be so presented — otherwise they are forever barred; and although in prohibiting actions against the executor or administrator where the estate is decreed to be insolvent, suits in equity are not in terms included; yet, we have no doubt that, in general, they come within the spirit and policy of those provisions. Where the remedy in equity is concurrent with that at law, and the claim might have been presented to the commissioner and allowed, and is not, we think it is clear that a court of equity will permit no relief, unless the omission to present the claim in season was caused by the fraud of the administrator, or some one, for whose act he is chargeable.

As a general rule, courts of equity are bound by a statute of

limitations equally with courts of law, and they cannot disregard the plain requirements of such statute; for that would be to repeal it. Fonb. Eq. B. 1, § 3. Even when the statute in terms, applies only to actions at law, which are enumerated, courts of equity act in analogy to it, and refuse to grant relief in cases coming within its provisions. 1 Story, Eq. Jur. § 64 *a*, and cases cited. *Kane* v. *Bloodgood*, *& al.*, 7 Johns. Ch. Rep. 92. In the case of executors and administrators, the limitations imposed by statutes are more stringently enforced than those of the general statute of limitations, both at law and equity; and it has been held that the omission to embody in the former statutes the exceptions contained in the latter, indicates a purpose to make the bar of suits against executors and administrators, absolute. *Atwood* v. *R. I. Agricultural Bank*, 2 R. I. 191.

This limitation of suits against executors and administrators, has been stringently enforced in this state, both at law and equity. *Judge of Probate* v. *Brooks*, 5 N. H. 82; *Ticknor* v. *Harris & al.*, 14 N. H. 272; *Cutter* v. *Emery*, 37 N. H. 567; *Walker* v. *Cheever*, 39 N. H. 420. The latter was a suit in equity against executors, and one ground of defence was, that the claim was not exhibited to the executors within two years from the grant of administration, nor the suit brought within three years; and the writ was held to be barred upon both grounds, and no question was made on account of its being a suit in equity. In *Atwood* v. *R. I. Agricultural Bank*, 2 R. I. 191, under a law much like our own, it was decided that the statute limiting suits against executors and administrators to three years, was binding upon courts of equity, as well as upon courts of law. In *Pratt and wife & al.* v. *Langley & al.*, executors and Judge of Probate & al., 5 Mason, Rep. 95, the same doctrine was held by *Story, J.* He says, "that the statute of limitations as to executors and administrators, is not created for their own security and benefit, but for the security and benefit of the estates, which they represent." "It is a wholesome provision, designed to produce a speedy settlement of estates, and the repose of titles derived under persons who are dead. If this statute could be avoided by any fraud (and on that point I give no opinion), it must be the fraud of the executors or administrators themselves, and not of third persons with whom they have no connection or privity."

We are then brought to the question, whether courts of equity can relieve a creditor against the bar of the statute in question, where the presentation of his claim within the time limited by the statute, has been prevented by the fraud of the executors or administrators, or by some person with whom he is in privity. This is a question of much practical importance, and but little direct light is thrown upon it by the adjudged cases. It should, therefore, be very cautiously approached. The provisions bearing upon this question, are those which respect estates settled in the insolvent course, and they are, that all demands which might be presented to the commissioners and are not, shall be forever barred; and that no action shall be com-

menced or prosecuted against an administrator, where the estate is decreed to be administered as an insolvent estate. If by these provisions it is to be understood that the legislature designed to prohibit the bringing or maintaining any suit either at law or equity under any circumstances, even when the presentation of the demand was prevented by the fraud of the executor or administrator, a court of equity would be bound to carry such purpose into effect.

But we do not think such a purpose, is to be gathered from the language of the two provisions. It is very clear that the provision first cited was not designed to bar every species of demand which was not presented ; and taking into view the fact that the limitation here, is substantially the same as that of the general statute of limitations, and that it is well settled that the effect of the latter will be avoided, by showing a fraudulent concealment of the demand, we have some reason for supposing that the legislature contemplated, a similar construction of the limitation of suits against an executor or administrator.

By the general statute of limitations, actions of trespass to the person, and actions for defamatory words, are to be brought within two years, and all other personal actions within six years, after the cause of action occurred, and not afterward. General Statutes, ch. 202, § 3, and the Revised Statutes was much the same ; and yet, although this limitation is explicit and includes all personal actions, it is well settled that it does not take effect when the debt is fraudulently concealed by the debtor, and this is the doctrine both at law and equity ; although it doubtless had its origin in equity, upon the ground that it was against conscience, that a debtor should set up the bar of the statute under such circumstances, and thus take advantage of his own fraud. The cases which establish this doctrine here are *Bowman* v. *Sanborn*, 18 N. H. 205 ; *Way* v. *Cutting*, 20 N. H. 187 ; *Douglass* v. *Elkins*, 28 N. H. 26 & 32. To permit a debtor thus to take advantage of his own wrong, would be so repugnant to every principle of natural justice, that it may well be presumed that it was not contemplated by the law-makers in framing this statute. To allow it, would be converting the statute into an instrument of fraud and injustice, and it would require strong language to justify such a construction.

The terms of the statute, limiting suits against executors and administrators, are no more explicit or absolute than those of the general statute of limitations ; and taking both provisions of the former into consideration, there is strong reason to presume that the legislature contemplated some exceptions to the general rule. Nor do we perceive any such difference, in the character of the two subjects, as to afford reason to regard the limitation of suits against executors and administrators to be absolute, and not subject to the established principle of equity, which precludes a party from taking advantage of his own wrong. Both are statutes of repose ; and if the purpose had been to make the prohibition of suits against executors and administrators absolute, even in cases of fraud, it would be

natural to expect a distinct expression of that purpose, instead of using terms so like those of the general statute of limitations, as to lead to the inference that a similar qualification was contemplated.

In many other cases, besides those arising under the statutes of limitations, courts of equity have been accustomed to afford relief against the literal terms of a statute, as in cases under the registry laws, when the grantor of land, had actual notice of a prior unregistered deed. In such cases, the grantee is guilty of a fraud, is a *male fide* purchaser, and a court of equity will not permit him to avail himself of a title thus acquired. 1 Story, Eq. Jur. 399, and cases cited. This is the settled doctrine in equity, and in this country it has been adopted by courts of law; and this is well settled in New Hampshire, notwithstanding the statute provides, that no conveyence of real estate shall be valid against any person but the grantor and his heirs, unless attested, acknowedged and recorded. *Colby* v. *Kenistor*, 4 N. H. 262 ; *Emmons* v. *Murray*, 16 N. H. 385 ; *Hastings* v. *Cutler*, 24 N. H. 481.

So in cases arising under the statute of frauds, courts of equity will grant relief in some cases, against the express words of the statute, upon the ground, that it ought not to be allowed to be set up as a protection and support of fraud. 1 Story, Eq. Jur. sec. 330; in *Montacute* v. *Maxwell*, 1 Str., 236 and same case, 1 P. Wms. 619 ; Lord Chancellor Parker, lays it down that in cases of fraud, equity should relieve even against the words of the statute, and it is upon this ground that equity will decree a specific performance of a parol agreement, to convey land when there has been a part performance, holding that when the vendor, has permitted the purchaser to act upon the parol agreement by entering upon the land and making improvements and the like, it would be a fraud in the vendor, to insist upon the statute as a bar to a specific performance of the whole agreement. 2 Story, Eq. Jur. sec. 579 ; *Hawkins* v. *Holmes*, 1 P. Wms., 772 and cases cited in note.

The distinct ground of equitable interference in such cases, is the prevention of fraud, holding that it could never have been the intention of the statute, to enable any party to commit such a fraud with impunity, and Story in the section last cited, lays it down that fraud in all cases, constitutes an answer to the most solemn acts and conveyances.

In *Newton* v. *Swazey & al*, 8 N. H. 13, it is said to be the doctrine of equity, that part performance does not overrule the statute, but takes the case out of it, and see cases cited, and in Madd. ch. 377–379. The ground on which courts of equity act in such cases, is well stated in *Tilton* v. *Tilton*, 9 N. H. 389.

Equity also grants relief not only against deeds, writings and the most solemn assurances, but against judgments and decrees obtained by fraud and imposition. 1 Johns. ch. R. 401. *Barnaby* v. *Powell*, 1 Ves. 120 & 284.

In a case kindred to the one before us, arising under a statute which provides that no action shall be sustained against any administrator

unless the demand shall have been exhibited to him within two years after the original grant of administration,   Bell C. J., lays it down that if an administrator, by his own wrongful acts, defeats and prevents the presentation of a claim, he cannot take advantage of his own wrongful acts, and he holds that if the administrator, shortly · after his appointment, should leave the state and remain absent until the expiration of the two years, he could not take advantage of the want of prosecution, during that time, *Walker* v. *Cheever*, 39 N. H. 426.

This provision applies to estates which are settled as solvent, but for aught we can see the policy of promoting a speedy settlement of these estates, applies as forcibly to them as to estates settled as insolvent; and we think this case is a strong authority, upon the point in question now.

In view of these principles and authorities, we are brought to the conclusion that when the omission to present a demand in due time, has been caused by the fraudulent act of the executor, or, administrator, or of any person with whom he is in privity, a court of equity may, consistently, with its rules, furnish relief and prevent the setting up the bar of the statute, upon the ground that it would be against conscience to insist upon it.   We are aware that some inconvenience may arise from the exercise of such a power.   It would be so, especially, if in all such cases, a suit at law could be maintained against the executor, or administrator, and a new distribution of the assets enforced; but, if this power is exercised exclusively by a court of equity, as it should be, moulding its decrees to suit the circumstances of each particular case, according to equitable principles, the inconveniences would be slight, compared with the great injustice of allowing a just claim, to be defeated by the fraud of the debtor, or by his representative.

In such cases, the court would require very clear proof of the fraud; also, that proceedings were commenced promptly after the discovery of the fraud, and, without unreasonable delay, considering the situation of the particular estate, and would shape its decree, so as not to disturb a distribution under a decree of the probate court duly made.

If, then, the estate was actually insolvent, and the assets duly distributed, the creditor, whose demand had not been presented, would have no remedy, but, if after the claims allowed by the commissioners were paid, there was still a surplus, the equity of the creditor, whose demand was so postponed by fraud would clearly be superior to that of the heir or legatee, in respect to that surplus, and, we think, it would be in accordance with the course of the court to enforce it.

The next question is, whether the allegations in the bill, which by the demurrer are admitted to be true, make a case of fraudulent concealment within the principle referred to.

The allegations in the bill are, that the intestate was the cashier of the Sugar River Bank, and that he fraudulently made an over issue

of its bills, and fraudulently converted and appropriated the amount of such over issue—being six thousand three hundred dollars—to his own use, and by his fraudulent practices while in life, the conversion of said bills was wholly concealed from the knowledge of the plaintiff, and wholly unknown to it until long after the time to which the commission might by law be extended; to wit, until after October 29, 1864.

Strictly speaking, the character of the fraudulent practices, ought to be disclosed in the bill, that the court may see that a case of fraudulent concealment is alleged, and that the respondent may have notice of the charge, but as no objection on this account is made to the bill, we pass it.

The great question is, whether a fraudulent concealment of the claim by the intestate, will so affect his representative, that he will be estopped to set up the statute bar. Upon this point, the court can well conceive that acts of concealment by the intestate, as by the making of false entries, may continue to operate until long after his death, and as the administrator represents the intestate, and is in privity with him, it must stand, for aught we can see, as if the fraudulent concealment was the act of the administrator. As the representative of the intestate, it would be against conscience to interpose the statute equally, as if the act was his own. See 1 Green. Ev. § 189, and cases cited.

The bill alleges, that the existence of this claim was wholly unknown to the plaintiff until long after the time to which the commission by law could be extended; to wit, until after October 29, 1864. The bill was filed November 19, 1868, more than four years after, and as it is not stated when the knowledge of the claim was in fact gained, it cannot be assumed that the proceedings were commenced within less than about four years from the time the existence of the claim became known, and no reason is assigned for the delay.

The proceedings should be commenced upon the discovery of the claim, promptly and without unnecessary delay, and without fixing upon any precise time, we have no hesitation, in saying that under ordinary circumstances, a delay of four years would be altogether unreasonable. By statute, a time not less, than six, nor more than nine months, from the date of the commission of insolvency, is allowed to the creditors, to present their claims, with power to extend it so as to make, in all, two years, on good cause being shown; and adopting the policy of this law as a guide, we think, the delay in commencing proceedings after the discovery of the existence of the demand, ought not to extend, ordinarily beyond a few months, depending in some degree upon the condition of the estate, Had the claim been known when the decree of insolvency was passed, it ordinarily must have been presented in six months, and this court interposes, simply to relieve the plaintiff from the effects of the alleged fraudulent concealment. A delay of any time like four years in commencing proceedings, must, under ordinary circumstances, be regarded as laches.

As the bill now stands, it is defective in this respect, and the demurrer must be allowed.

The representative of the estate must be made a party, but as the administrator appears to have abandoned his trust and gone to parts unknown, and beyond the reach of process, a proper case is shown for his removal from the trust and the appointment of another by the probate court, and upon that being done, he would be made a party.

If the case required it, the court might appoint a receiver to prevent the destruction of the property, until an administrator was appointed, and that ought to be done, that there may be some one to represent the distributees as well as creditors.

As the bill does not undertake to charge the heirs, as such, but goes upon the ground that all the assets, are still subject to be charged by the creditor in the hands of the administrator, we have not thought it necessary to consider, whether this claim is to be regarded as one, that could not be allowed by the commissioners, because it depended upon a contingency that did not happen during the pendency of the commission.    At present, the question does not arise, and may not, at any time.

*The demurrer must be sustained.*