Rockingham,
No. 4741.

## MANCHESTER *v.* AUBURN.

Argued September 1, 1959.

Decided October 6, 1959.

Reargued November 4, 1959.

Former Result Affirmed December 31, 1959.

*McLane, Carleton, Graf, Greene & Brown (Mr. Greene* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters (Mr. Starr* orally), for the defendant.

DUNCAN, J. What is now RSA 72:11 was enacted in part in 1911 (Laws of 1911, c. 40), shortly after the decision in *Canaan* v. *District,* 74 N. H. 517. See *Keene* v. *Roxbury,* 81 N. H. 332, 335. The constitutionality of the 1911 statute, which exempted from taxation waterworks property of a city located within another town, and imposed in lieu of taxes a charge based on the average of the assessments upon the property for the three years preceding its acquisition by the owning municipality, was affirmed in *Keene* v. *Roxbury, supra.*

The statute was thereafter re-enacted without material change until 1953, when the amendment in question was adopted. Before amendment the material provisions of the statute were as follows: "Property held by a city . . . in another . . . town for the purpose of a water supply . . . if yielding no rent, shall not be liable to taxation therein, but the city . . . so holding it shall annually pay to the . . . town in which such property lies an amount equal to that which such place would receive for taxes upon the average of the assessed value of such land, without buildings or other

structures, for the three years last preceding . . . acquisition thereof . . . . '' R. L., 73, s. 12.

The amendment added to the foregoing provisions, the following proviso: "Provided, however, that after such acquisition the valuation thus established shall be reviewed by the tax commission at least once in every five years, and be raised, or lowered, as the case may be, to make such value proportional with the assessed value of other property in the town which is subject to taxation, so that such payment will not exceed its proportion of the public charge in each year . . . . '' RSA 72:11.

The valuation by the Tax Commission of the plaintiff's water supply property in Auburn was made pursuant to the 1953 amendment. The property was appraised, exclusive of buildings and improvements, at its fair market value. The figures thus arrived at by the Commission were thereafter used by the selectmen in assessing the charge in lieu of taxes at sixty per cent of market value as found by the Commission, which was the ratio employed in assessing other property in the town for taxation.

The plaintiff takes the position that since the amendment made no change in the language of the prior statute, the Legislature could not have intended revaluation by the Commission to establish market or true value as a new basis for the annual charge in lieu of taxes. It argues that the procedure adopted subjects its water supply property to a charge in all respects identical with taxes assessed upon other property annually by the selectmen, except that buildings or other structures are not included in the valuation; and that if such a method had been intended by the Legislature, the existing provisions of the statute for an original charge based upon the average assessment for three years preceding acquisition would have been repealed and the matter of valuation left to the selectmen.

On the other hand, it is impossible to derive from the amendment a meaning differing from that placed upon it by the Commission and now urged by the town. As the city's contention is understood, the purpose of the Legislature was not to place the periodic revaluation of water supply property upon the same basis as the assessment of property for taxation, but rather to require that the original valuation fixed in accordance with the statute should be modified, not by reference to market or true value, but solely by reference to any change in the current ratio of assessed values to true values, as compared with the ratio in use at the time of

acquisition of the water supply property. Thus as we conceive the argument, if assessments upon taxable property on acquisition of a particular property for purposes of water supply were fifty per cent of true value, but upon reappraisal of the water supply property by the Commission were found to have been raised to sixty per cent of true value, a twenty per cent increase in ratio, then the reappraisal by the Commission was intended to be not sixty per cent of the true or market value of the water supply property, but the original valuation of the property at the time of acquisition, plus twenty per cent.

No doubt such a method of valuation could be required. Neither the taxpayers of the municipalities involved, nor the municipalities themselves have any constitutional rights with respect to the charge made in lieu of taxes so long as it may reasonably "be considered a fair return for special benefits received." *Keene* v. *Roxbury, supra,* 337. The original statute was plainly intended to take water supply property out of the realm of taxation, and impose a charge in the nature of a charge for special benefit, or a condition upon the grant of a power. *Id.,* 336; *Lisbon District* v. *Lisbon,* 85 N. H. 173; *Keene* v. *Roxbury,* 97 N. H. 82. However, we are unable to gather from the language of the amendment, any purpose to provide a method of revaluation such as the city contends was intended.

Prior to the amendment of 1953, the valuation of water supply property was fixed by the average of the last three tax assessments. The annual charge was determined by applying the current tax rate to that valuation. If the rate increased, the charge increased proportionally. But regardless of increases in the value of taxable properties or in assessments, the valuation of water supply property remained constant.

The amendment for the first time provided for modification of the original valuations of water supply properties. It provided that the "valuation" should be raised (or lowered) to make it "proportional with the assessed value of other property in the town which is subject to taxation." This was to be done in such a way that the resulting "payment" or charge "will not exceed [the city's] proportion of the public charge in each year." RSA 72:11, *supra.* As the town points out, this is the language of taxation, even though the original provisions of the statute, which are still retained, provide that water supply property "shall not be liable to taxation."

The language of the amendment conveys no suggestion of concern with the ratio of assessed values to true values. On the contrary, the Legislature expressly directed that the "valuation" should henceforth be kept "proportional with assessed value." This can only mean that if assessed values have been raised or lowered, the valuation of water supply property shall be made proportional to the new assessments.

The Legislature was concerned with changes in the factor of valuation, not in the other factor of rate of taxation or in the ratio of valuation to full and true value. If assessments increased ten per cent, then the valuations of water supply property should be increased proportionally. If assessed properties were found to have increased in true or market value, and at the same time were assessed at a higher ratio of that value, then water supply property valuations were still to be increased in proportion.

Thus an increase in the ratio of assessments to market or true value from fifty to sixty per cent, coupled with a one hundred per cent increase in market value, would increase assessments to two hundred forty per cent. If at the same time the original valuation of water supply property was increased only by the percentage of increase in the ratio (twenty per cent), as urged by the city, the new valuation produced for such property would be one hundred twenty per cent of the original value, as compared with assessments of taxable property at two hundred forty per cent of what they were at the time of acquisition of the water supply property. The Legislature could not have intended to describe such a procedure, when it directed that the valuation should be made "proportional with the assessed value of other property . . . subject to taxation." See *Brock* v. *Farmington,* 98 N. H. 275, 279; *Bemis &c. Bag Co.* v. *Claremont,* 98 N. H. 446, 449, 450.

It follows that the effect of the amendment is to preserve to the water supply property of the plaintiff its exemption from taxation by the town to the extent that no charge shall be made on account of buildings or structures, and that the property shall not be valued as a public utility (see *Public Service Company* v. *New Hampton,* 101 N. H. 142); but that in other respects the annual charge is to be determined on the basis of periodic revaluations by the Tax Commission to make the value proportional to assessments for taxation, which involves use of the same general method employed in making assessments.

Before the 1953 amendment, the statute prescribed the method of determining the valuation of property acquired for water supply

purposes without designating the agency to make the determination. See *Lisbon District* v. *Lisbon*, 85 N. H. 173, *supra*, 176. In this situation, the authority of the interested municipalities to fix the valuations by agreement would not seem to be open to question. *Clough* v. *Verrette*, 79 N. H. 356. The 1953 amendment however provided for periodic revaluation by the Tax Commission. Doubtless when valuations so fixed are disputed, they may be modified by compromise agreement of the parties. But prior agreements fixing valuations cannot be binding upon the Commission as a finder of the facts, or require that it adopt an agreed figure in performance of its statutory duties.

The amendment altered the obligation of the city, and the 1946 agreement relating to its obligations under the prior statute can no longer be effective. The right of the parties to compromise differences concerning the determination of the annual charge remains, but to be enforceable, such an agreement must relate to the city's obligation under the amended statute. The obligation to which the 1946 agreement related ceased to exist in 1955 when the Tax Commission submitted its revaluation.

The question of the plaintiff's right to question the charge made in 1955 is disposed of by our ruling that the charge was determined in accordance with the amended statute. It is to be doubted that any relief from the revaluation established by the Commission is open to the city, apart from statutory appeal. An aggrieved municipality is given "the same right of appeal . . . as a taxpayer has from a re-assessment made by the tax commission." RSA 72:11. That right is the "same . . . as from the original assessment." RSA 71:17. Relief from an original assessment is by petition for an abatement (RSA 76:16) followed by petition to the Superior Court "within six months after notice of such tax," (RSA 76:17) which in this case must mean notice of the charge in lieu of taxes. In granting the remedy of an appeal by a petition for an abatement, the Legislature must be deemed to have intended that it be subject to the same limitations as a petition for abatement of taxes, one of which is that the appeal is an exclusive remedy. *Rowe* v. *Hampton*, 75 N. H. 479; *Edes* v. *Boardman*, 58 N. H. 580, 591-594. A bill in equity will not lie to establish an exemption. *Lefevre* v. *Healy*, 92 N. H. 162; *Bean &c. Co.* v. *Jaffrey*, 80 N. H. 343.

The order is

*Remanded.*

All concurred.

On REHEARING. After the foregoing opinion was filed, the plaintiff moved for rehearing; the defendant in response sought clarification of procedural questions; and rehearing was granted. Arguments were particularly invited on the procedural questions.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Greene* orally), for the motion.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Starr* orally), opposed.

DUNCAN, J. Upon reconsideration of the opinion in the light of the plaintiff's argument on rehearing, no reason is seen to depart from the views then held. The reargument makes it plain, if it was not previously, that the statutory interpretation advanced by the plaintiff would make no allowance for the effect of increases in the assessed values of taxable property which doubtless resulted from the inflationary influences at work both before and after adoption of the 1953 amendment, and which must have been a substantial factor in prompting the amendment. The Legislature could not well have been oblivious to the fact that the 1911 statute operated to keep the valuation of water supply properties constant, while tax assessments were rising sharply.

If following the acquisition of water supply properties by the plaintiff, the true or market values of taxable properties in the town increased, quite apart from any increment of value attributable to improvement of such property, and thereby produced increased tax assessments, the amended statute requires that the original valuation of the water supply properties, based on historical assessments presumably proportional to other assessments at that time, shall be increased in proportion to any subsequent rise in assessed values of properties which remained taxable. And in this, as well as the original opinion, when reference to increases in the true and market value of taxable property is made, increases due to inflation or to the devaluation of the dollar are meant, and not increases resulting from development of the taxable property by new construction or the like. Obviously in dealing with a charge on water supply property upon which buildings and structures were to be disregarded in fixing a valuation, the Legislature did not intend to require such valuation to be raised because of increases in the assessed values of taxable properties attribut-

able solely to additions and improvements thereon. The fore-going opinion should not be construed to so require.

The plaintiff correctly points out that the 1953 amendment contains no express reference to "true value" as a standard to be employed by the Tax Commission in making a revaluation. But in this case, since true value was used as a standard in appraising property for taxation, it must necessarily play a part in revaluation of the plaintiff's water supply property, in conformity to the amended statute. In order for the revaluation to be "proportional with the assessed value of other property in the town" (RSA 72:11), which is required by RSA 75:1 to be appraised at "full and true value," the revaluation of water supply property must likewise be at true value, or in the same ratio thereto as assessed values, if the latter are not at true value.

Since in this case assessments were fixed at sixty per cent of true value, the charge based upon revaluation of non-rental water supply property was properly fixed at the same percentage of true value, "so that such payment will not exceed its proportion of the public charge." RSA 72:11.

The defendant has raised the question of whether it is open to the plaintiff, in the pending proceedings relating to both taxes and charges in lieu of taxes for the years 1956 through 1958, to question the revaluation of 1955 upon which the latter charges are based. The 1953 amendment of RSA 72:11 did not purport to affect the right of the plaintiff to question the amount of any annual charge, nor did it purport to fix the manner of enforcing its rights and obligations with respect to such a charge, apart from any appeal from a revaluation by the Tax Commission as to which it pre-scribed a petition for abatement as the exclusive remedy. The plaintiff's right, for example, to question the computation of the charge made upon the basis of a revaluation, and the procedures available for asserting that right remained unchanged.

Thus for the year 1956, the plaintiff could properly question in the pending proceeding the amount of the charge made for the year 1956 or later years, if based in part upon the valuation of property previously sold, or which became taxable prior to the year in question because yielding rent; or if the aggregate charge was disproportional, because computed by the selectmen according to a ratio to total true value differing from the ratio used in assessing taxes. However the plaintiff may not now attack the revaluation figures established by the Tax Commission in 1955, because it has failed to perfect its statutory appeal from that decision.

Since the plaintiff's appeal relating to 1956 and later years brings in question taxes upon its taxable property as well as charges in lieu of taxes upon exempt water supply property, any issues relating to the latter class of property, except that of the validity of the Commission's valuation, may properly be determined in the pending action. *Keene* v. *Roxbury*, 81 N. H. 332, 340; *Lisbon District* v. *Lisbon*, 85 N. H. 173, 176. But we do not read the latter case as standing for the proposition that a petition for abatement is necessarily the appropriate or exclusive method of determining the validity of the annual charge, as suggested by the plaintiff.

When however a municipality seeks to question a decision of the Tax Commission establishing a revaluation, a petition for abatement furnishes the only remedy, as stated in the former opinion. Procedural difficulties may arise under the amendment because of its adoption by reference, of tax abatement procedures. *Cf. Manchester Housing Authority* v. *Fisk*, 102 N. H. 280. And it may be as the plaintiff argues, that a more practicable course would have been afforded by enactment of provisions analogous to those of RSA 82:16-24 relating to appeals from decisions of the Tax Commission. This however is a legislative question, as to which either party is free to seek appropriate relief before the Legislature.

The order on rehearing is

*Former result affirmed.*

All concurred.
December 31, 1959.