48 CCPA (Customs) 91

**UNITED STATES, Appellant,**

v.

**ELOF HANSSON, INC., Appellee.**

**Customs Appeal No. 5032.**

United States Court of Customs
and Patent Appeals.

Dec. 22, 1960.

George Cochran Doub, Asst. Atty. Gen., Richard E. FitzGibbon, Chief, Customs Section, New York City (George S. Leonard, Alan S. Rosenthal, Trial Attys., Washington, D. C., of counsel), for United States.

Sharp & Bogan, Washington, D. C. (Alfred R. McCauley, Washington, D. C., Myron Solter, James R. Sharp, Washington, D. C., and Raoul Berger, Chicago, Ill., of counsel), for appellee.

MacLeish, Spray, Price & Underwood, Chicago, Ill. (Robert C. Keck, Chicago, Ill., of counsel), amicus curiae.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge William H. KIRKPATRICK.*

SMITH, Judge.

The single judge Customs Court in Reap.Dec. 9212 sustained the determination of the Acting Secretary of the Treasury (89 Treas.Dec. 197, T.D. 53567) made pursuant to the Antidumping Act of 1921 (19 U.S.C. § 160, 19 U.S.C.A. § 160) that "the industry manufacturing hardboard [1] in the United States is likely to be injured by reason of the importation into the United States of hardboard from Sweden, and that hardboard from Sweden is being sold and is likely to be sold in the United States at less than its fair value." The judgment of the trial court was reversed by the Third Division, Appellate Term, 178 F.Supp. 922, 923 (A.R.D. 114) and the present appeal was taken.

The Appellate Term stated the primary issue to be "whether the Administrative Procedure Act (5 U.S.C.A. § 1001, June 11, 1946, ch. 324; 60 Stat. 237, as amended) applied to findings of dumping made under the Antidumping Act of 1921." The trial court held that the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.[2] did not apply while the Appellate Term held that it did.

It is our opinion, however, that the stated issue is not the primary issue requiring decision. The fundamental and underlying issue as we see it is: Did appellee, having actual notice of the pendency of the investigation by the Secretary of the Treasury under the Antidumping Act of 1921, and having participated actively and without objection in the investigation preceding the finding of dumping, thereby waive its right to reply upon the asserted procedural irregularity to nullify the finding of dumping?

The facts pertinent to a determination of this issue are that the antidumping investigation, which lasted one and one-half years and culminated in the presently challenged finding of dumping, originated in a petition dated March 31, 1953, which was filed with the Secretary of the Treasury by the Hardboard Association as representative of all, but three, of the domestic manufacturers of hardboard.

Within a month after filing the petition, Mr. Geller, an Examiner of Merchandise from the office of the Appraiser of Merchandise, contacted representatives of appellee and informed them of the petition, told them that the Secretary of the Treasury was making an investigation, solicited information in the form of analytical data, and invited appellee's participation in the proceedings. Appellee participated in the proceedings and supplied data to Mr. Geller under a cover letter dated May 5, 1953.

The testimony also establishes that from April 20, 1953, and extending through the spring and summer of 1953, there were numerous conferences between a Mr. Weitzel, Assistant to the Assistant Secretary of the Treasury, and the importers of Swedish hardboard, including appellee, concerning the investigation. These conferences sometimes involved the importers and sometimes their attorneys, as well as representatives from the foreign embassies and from the domestic industry. Information was communicated both in verbal discussions and in writings. The exhibits here include a letter dated June 29, 1953, from appellee to the Commissioner of Customs, containing a request for a copy of the Hardboard Association's petition. Another letter is one dated June 30, 1953 from the attorneys for appellee requesting an opportunity to be heard and to submit evidence, should the bureau find that a "*prima facie* case of dumping is established." There was an extensive correspondence by appellee's attorneys di-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Hardboard is a hard, dense board made from wood fibers interfelted and compressed under heat and pressure. (This footnote added.)

2. Hereinafter referred to as the A.P.A.

rected to the Customs Bureau with respect to the investigation.

On August 21, 1953, while the investigation was pending, appellee purchased the merchandise, the appraisement of which is here in issue. On October 13, 1953, the Acting Commissioner of Customs issued a letter authorizing all appraisers to withhold appraisements of entries of Swedish hardboard, and to issue the Customs Form 6459 Notice of Withheld Appraisement.[3] Copies of this notice were sent to appellee and to the collector.

On December 3, 1953, appellee's merchandise was entered, and appellee acquiesced without objection to withholding the appraisement after receipt of notice thereof on Customs Form 6459. Approximately nine months later, the investigation was completed and the Acting Secretary, on August 26, 1954, made the finding of dumping which was published in the Federal Register on September 3, 1954 (19 F.R. 5631). Shortly thereafter, on September 9, 1954, notice of appraisement was sent to appellee, who soon thereafter instituted the present action.

No notice of the investigation was published in the Federal Register. However, all of the importers of Swedish hardboard whose merchandise was either awaiting appraisement on, or was entered subsequent to, October 13, 1953, received Customs Form 6459 notices.

In addition, the testimony indicates that the importers, embassies and domestic producers received actual notice of the petition and that they actively participated in the investigation from the outset. At no time during the course of the entire investigation was any issue raised before the Secretary, either directly or through the Customs Bureau, of any procedural irregularities in the investigation based on alleged non-compliance with the A.P.A. provisions requiring the publication in the Federal

Register of notice of "rule making" proceedings.

The best interests of orderly procedure require that if any right or interest of appellee were infringed or even endangered by the procedure followed in the investigation, appellee should have made timely objection thereto.

The only asserted procedural irregularity in the antidumping investigation here in issue is the failure, based on appellee's theory that the finding of dumping was "rule making," of the Secretary of the Treasury to publish notice of the proceeding in the Federal Register as required by Section 4 of the A.P.A.

These facts seem to us to bring the present case squarely within United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54. It is our opinion that the Tucker decision clearly requires that the issue here sought to be raised should have been raised by timely objection at the administrative level. Appellee's position here is aptly characterized, in the words of the Tucker decision as being "clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and [which] can prevail only from technical compulsion irrespective of considerations of practical justice." (Id. p. 36, 73 S.Ct. at page 68.)

Applicable here, is the rationale of the Tucker case, as stated by the Supreme Court, that

"Courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made * * *." (Id. p. 37, 73 S.Ct. at page 69.)

The view we take of this case is, therefore, that it is not necessary to pass here on the applicability of the A.P.A. to antidumping investigations under the Antidumping Act of 1921. We dismiss, on

---

3. Form 6459 contains the following statement: "Appraisement is being withheld on * * * pending investigation as to whether or not the said merchandise is being imported in violation of the Antidumping Act of 1921."

the authority of the Tucker decision, appellee's argument that the procedural irregularity resulted in the loss of agency jurisdiction so that the order is totally void. The holding in the Tucker case is directly contrary to appellee's position that the procedural irregularity here was converted into a jurisdictional irregularity.

Appellee relies heavily upon the decision in Hotch v. United States (C.A.9th) 208 F.2d 244 (1953), petition for rehearing granted, 208 F.2d 249, petition for rehearing denied, 212 F.2d 280 (1954), to support its position. We think the Hotch case is clearly distinguishable and is, therefore, not controlling here.

In the Hotch case, as distinguished from the instant situation, Hotch had no opportunity to object to the procedures followed by the Secretary of the Interior prior to the criminal action against him. Hotch had no notice of and did not participate in the "rule-making" hearings. The issue upon which our decision turns, viz., whether a participant in administrative proceedings can raise a procedural objection for the first time on appeal to the courts, was never before the court in the Hotch case and, therefore, was not decided. Thus that case is not pertinent in determining the matters here in issue.

We, therefore, hold on the authority of the Tucker decision that the procedural irregularities which appellee asserts arose from the failure of the Secretary of the Treasury to publish the notice required by Section 4 of A.P.A. was a procedural irregularity which appellee has waived by participating in the antidumping investigation without making timely objection to the Secretary of the Treasury.

■ The view we take of this issue makes it unnecessary to pass upon either the issue of applicability of the A.P.A. to an antidumping investigation under the Antidumping Act of 1921 or the issue of whether or not the finding of dumping was "rule making" as defined in the A.P.A. and leaves for our consideration only the issue based on appellee's contention that the Secretary erred in finding that the domestic hardboard industry would be "injured" by the imports of Swedish hardboard.

The specific language placed in issue by this contention is found in Section 201 (a) of the Antidumping Act of 1921, as follows:

"(a) Whenever the Secretary of the Treasury (hereinafter * * * called the 'Secretary'), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers."

It is appellee's contention that when Congress used the word "injured" in the said section it meant "destroyed." It is fatal to appellee's position on this issue that it has produced neither evidence as to the construction placed upon the word "injured" by the Secretary nor evidence to indicate what the Secretary found with respect to the effects of the imports upon the domestic industry.

■ In this connection, appellee directs the attention of the court to a report of the Tariff Commission on the hardboard industry, made at the request of the Senate Committee on Finance for certain information. Appellee suggests that we either accept the Tariff Commission's findings as those of the Secretary or reevaluate the evidence to make our own findings.

In Kleberg & Co. (Inc.) v. United States, 71 F.2d 332, 335, 21 CCPA 110, T.D. 46446 (1933), this court, after a review of the pertinent cases, said:

"* * * we are not at liberty here to go into an investigation as to whether the facts shown on the trial below justified the issuance of the order complained of. Under the statute, the Secretary was not confined to any particular source of information or means of investigation. Furthermore, such information as he might obtain was not open to public inspection, unless he felt that the public interest so required. Norwegian Nitrogen Products Co. v. United States, 20 CCPA Customs 27, T.D. 45674, affirmed in 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796."

The judgment is reversed.

Reversed.