Board of Taxation
No. 6894

GEORGE PARAS & a.

v.

CITY OF PORTSMOUTH

February 28, 1975

*Lincoln & Edwards (Mr. William L. Edwards* orally) for the plaintiffs.

*Gerald Glasser* and *Peter J. Loughlin,* city attorney *(Mr. Loughlin* orally), for the defendant.

GRIMES, J. This case involves appeals taken from the board of taxation. Plaintiff filed for real estate tax abatements on property located at 63-83 Congress Street, in Portsmouth, New Hampshire, for the years 1965, 1969, 1970, 1971, and 1972 with the State tax commission, which was reorganized as the board of taxation by the State legislature in 1973. RSA 76:16-a (Supp. 1973). The 1965 abatement petition was denied in 1969 by the State tax commission. On January 10, 1974, the board of taxation held a hearing on the 1969, 1970, 1971, and 1972 abatement claims. Partial abatement was ordered. A rehearing was held at the plaintiff's request in March 1974, and the board affirmed its earlier decision. Following this final decision, the petitioner perfected appeals to this court pursuant to RSA 76:16-a (Supp. 1973) and RSA ch. 541.

These appeals are brought in the name of George Paras *et al.* but the real party in interest is a holder of a long-term lease in the realty.

The issues to be decided in this case are whether the plaintiff's request to review a 1965 claim for a tax abatement on the subject property is properly before this court, and whether the board of taxation erred as a matter of law in refusing to grant the plaintiff's requested abatement claims on such property for the years 1969, 1970, 1971, and 1972.

According to one of the plaintiff's appraisers, the property in issue is located in an area "not quite equalling" the best retail location in the city and borders on an urban renewal area where there has been new commercial construction including an enclosed shopping mall. A 75-year-old three-story brick building sits on the land. Retail stores occupy the ground level of the building, most

of the basement, and part of the second floor. The upper floor of the building is closed off and an old abandoned theater occupies the remainder of the premises. The entire premises are subject to a 50-year-old "net-net" leasehold due to expire in 1978 with a 25-year option which has been exercised and which will run to the year 2003. (A net-net lease requires the lessee to assume all operating expenses such as maintenance, insurance and taxes in addition to the payment of rent.) Current yearly rental on the property is $17,000.

In 1965 the plaintiff filed for abatement with the State tax commission. The 1965 city assessment for the property was $250,000 at 50% market value. Pursuant to its authority the commission requested from the plaintiff's attorney data on the operating expenses and income on the property. This essential data was not delivered up although numerous requests were made. Plaintiff's attorney was then informed in March of 1969 that the petition for abatement had been denied because the commission was "unable to obtain data pertaining to the income and expenses of the above-captioned property". Plaintiff subsequently hired new counsel to pursue this matter and claimed that his original counsel had failed to inform him the abatement had been denied. Original counsel was suspended from practice in 1970.

On January 13, 1970, the plaintiff filed a new request for real estate tax abatement for the 1969 assessment with the Portsmouth assessors which was denied. Thereupon, plaintiff filed an appeal with the State tax commission for the 1969 assessment.

Subsequently, the plaintiff received a tax bill for 1970 based on a $300,000 valuation on the premises. A request was tendered to the city assessor for abatement and was rejected because the assessor believed the assessment to represent the fair market value of the property and because all assessments were doubled in 1970 by a vote of the city council. By 1971, the plaintiff had perfected appeals to the State tax commission on his 1969, 1970, and 1971 assessments. Near the end of September 1972, plaintiff was notified by United Appraisal Company, the appraiser for the city of Portsmouth, that the market-value assessment for the property was currently $195,100 and the plaintiff again sought an appeal to the State tax commission.

A hearing was held on January 10, 1974, by the board of taxation, on the 1969, 1970, 1971, and 1972 abatement petitions. The city of Portsmouth was properly notified but failed to appear. Plaintiff at that time presented expert evidence on the value of the land

in issue claiming that under an "income valuation" approach its assessment should be at most $142,000.

Following the hearing, the findings made by the board included the following:

| Year | Full Value | Assessment | Proportional Assessment | Original Assessment | Over Assessment |
|------|-----------|------------|------------------------|--------------------|-----------------|
| 1969 | $195,100 | 50% | $97,550 | $250,000 | $152,450 |
| 1970 | 195,100 | 86% | 167,800 | 300,000 | 132,000 |
| 1971 | 195,100 | 92% | 179,500 | 300,000 | 120,500 |
| 1972 | 195,100 | 100% | 195,100 | 195,100 | 0 |

On February 6, 1974, pursuant to the order of the board, the city remitted to the plaintiff $28,669.02 plus 6% interest from the date of payment of taxes.

After the January 1974 hearing, the plaintiff was given access to the board's records in order to ascertain the basis of its decision. The file on this case indicated that both the city and State board computed the assessment level on the Portsmouth property by the replacement cost minus depreciation method of valuation. Thereafter, the plaintiff sought and received a rehearing on March 18, 1974, based on new evidence which included new appraisals based on the comparable sales approach. The city, after notification, again did not appear. On the following day, the board reaffirmed its earlier decision and these appeals were taken.

### The 1965 tax abatement

Relative to the 1965 tax abatement, when the plaintiff's lawyer repeatedly failed to deliver up essential income and expense information, the commission on March 5, 1969, denied the petition because it had no new evidence to justify an abatement.

Under RSA 76:17 in effect in 1969, the plaintiff had the right to appeal the tax commission's decision by filing a petition in superior court within three months but did not do so. Because property tax abatement is an equitable remedy utilized to correct errors in property tax levies *(Hodges v. Kensington,* 102 N.H. 399, 400, 157 A.2d 649, 650 (1960)), it is subject to the equitable defense of laches. *Manchester v. Auburn,* 102 N.H. 325, 331, 156 A.2d 774, 780 (1959); *Bretton Woods Co. v. Carroll,* 84 N.H. 428, 432, 151 A. 705, 707 (1930); 72 Am. Jur. 2d *State and Local Taxation* § 809 (1974); 84 C.J.S. *Taxation* § 583 (c) (1954, Supp. 1974). When the plaintiff failed to meet the statute of limitations imposed on appeal, he barred himself from raising the issue, since it is a well-understood principle of equity that laches follows the statute of limitations.

*Keene v. County,* 79 N.H. 198, 200, 106 A. 486, 487 (1919); *Wentworth v. Wentworth,* 75 N.H. 547, 550-51, 78 A. 646, 648 (1910); *Bank v. Fairbank,* 49 N.H. 131 (1869).

Nevertheless, the plaintiff contends he should not be bound by his lawyer's actions or inactions, and therefore, to invoke laches as a hard-and-fast rule in this instance would be inequitable. *See Cote v. Cote,* 94 N.H. 372, 374-75, 54 A.2d 360, 361-62 (1947). We cannot agree. An attorney is the agent of the client, provided his acts are within the scope of his authority. *Eida v. Stoddard,* 111 N.H. 123, 276 A.2d 12 (1971). Plaintiff is, therefore, bound by the acts of his attorney, including acts of omission or neglect. *Dumas v. Hartford &c. Ind. Co.,* 94 N.H. 484, 490-91, 56 A.2d 57, 61-62 (1947); *Berman v. Griggs,* 145 Me. 258, 75 A.2d 365 (1950); *Lineham v. Lineham,* 223 Mass. 297, 298, 111 N.E. 901 (1916). *See also* W. Seavey, Law of Agency § 31 (1964). Moreover, plaintiff himself waited over four years, during which he was unable to contact his attorney, before acting to assert his claims. Consequently, the plaintiff is barred from raising the issue of his 1965 abatement petition because of laches. *Ives v. Sargent,* 119 U.S. 652 (1887); *Miller v. Barto,* 247 Ill. 104, 93 N.E. 140 (1910).

### The 1969-72 tax abatements

The appeals regarding the 1969, 1970, 1971 and 1972 taxes are governed by RSA 76:16-a V (Supp. 1973) which became effective September 1, 1973. Under this section the findings of fact of the board are final and the appeal is limited to questions of law. *Dartmouth Corp. of Alpha Delta v. Hanover,* 115 N.H. 26, 332 A.2d 390 (1975).

State law requires that cities and towns appraise "all taxable property at its full and true value in money" (RSA 75:1) or "bring such valuations to the true and market value". RSA 71-B:5 II (Supp. 1973). Since the statutes are silent about the method or combinations of methods to be used in making value estimations, this court, as well as others, has permitted considerable leeway. 2A C. Antieau, Municipal Corporation Law § 21.17, at 170 (1974). Reproduction or replacement cost methods are acceptable. *Fusegni v. Portsmouth Housing Auth.,* 114 N.H. 207, 317 A.2d 580 (1974); *New England Power Co. v. Littleton,* 114 N.H. 594, 326 A.2d 698 (1974). Income-producing power of property can be another standard in fixing value. *Public Service Co. v. New Hampton,* 101 N.H. 142, 148, 136 A.2d 591, 596-97 (1957). The comparable sales method may also be used. *Bartage, Inc. v. Manchester Housing Auth.,* 114 N.H. 203, 318 A.2d 152 (1974). But all relevant factors to property value

should be considered when making an appraisal in order to arrive at a just result. *Concord Natural Gas v. Concord,* 114 N.H. 54, 314 A.2d 679 (1974); *Trustees &c. Academy v. Exeter,* 98 N.H. 473, 33 A.2d 665 (1943); *Grafton &c. Co. v. State,* 78 N.H. 330, 100 A. 668 (1917).

As a quasi-judicial body, the board of taxation must assess conflicting evidence, its credibility, and the weight to be given the various portions thereof. RSA 76:16-a (Supp. 1973); *Opinion of the Justices,* 87 N.H. 492, 179 A. 357 (1935); *Manchester v. Boston & Maine R.R.,* 98 N.H. 52, 94 A.2d 552 (1953); *Peter Salvucci & Sons, Inc. v. State,* 110 N.H. 136, 155-56, 268 A.2d 899, 911-12 (1970), *aff'd,* 111 N.H. 259, 281 A.2d 164 (1971). In this case the board of taxation freely admitted in its opinion that it had "placed considerable weight on the re-evaluation company's (United Appraisal Company) appraisal and the review appraiser's report which varied by less than 3% from each other." This ultimately resulted in a valuation using the replacement cost method of $195,000. By relying on this mode of appraisal, the board necessarily gave less weight to the comparable sales and the income capitalization methods offered as evidence by the plaintiff.

Expert evidence submitted by the plaintiff indicated that under an income valuation method property like the plaintiff's, with an annual income of $17,000, should be valued at $142,000. But within the discretion granted the board, the current earning power of the property is not necessarily the controlling factor in fixing market value. *Donovan v. Haverhill,* 247 Mass. 69, 141 N.E. 564 (1923); *In re Pine Raleigh Corp.,* 258 N.C. 398, 403-04, 128 S.E.2d 855, 859-60 (1963); *People ex rel. Gale v. Tax Comm'n,* 17 App. Div. 2d 225, 233 N.Y.S.2d 501 (1962).

In a similar manner, the board could have found that the sales figures of other property, which ranged widely, were not an adequate showing of value, because of remoteness in time or lack of comparability. *Cohn v. Hartford,* 130 Conn. 699, 704-06, 37 A.2d 237, 240 (1944).

Since the board had before it all the city's records and appraisal reports as well as the plaintiff's memoranda of law and other expert appraisals, we cannot find that it erred as a matter of law in reaching its decision by placing "considerable weight" on certain evidence. This was a matter of reasoned discretion in the fact-finding process. And as a matter of logic, decision-making always necessitates relying more on some information than on other.

Plaintiff also contends that he was denied due process because

of extended delays and because he was denied information with regard to the evidence upon which the board relied. We agree that there was undue delay in granting a hearing in this case; however, we see no suitable remedy under the particular facts of this case, nor are we convinced that there was any substantial prejudice to the plaintiff.

RSA 76:16-a IV (Supp. 1973) and RSA 71-B:7 (Supp. 1973) provide that the board shall not be bound by technical or strict rules of evidence. *New England Tel. & Tel. Co. v. State,* 113 N.H. 92, 302 A.2d 814, 821 (1973). RSA 76:16-a I (Supp. 1973) authorizes the board to conduct an "inquiry and investigation" prior to hearing and RSA 71-B:7 (Supp. 1973) provides that the board "may introduce into evidence or take into consideration ... any information obtained through its own investigation." *See* RSA 76:16-a III (Supp. 1973). Justice requires that it reveal to the taxpayer evidence obtained by its own investigation which it intends to consider so that the taxpayer may have a reasonable opportunity to meet that evidence. Annot., 18 A.L.R.2d 552 (1951); 2 Am. Jur. 2d *Administrative Law* § 444 (1962); 1 F. Cooper, State Administrative Law, ch. VII, § 2 (1968); *see State v. Duranleau,* 99 N.H. 30, 104 A.2d 519 (1954). Here, plaintiff was denied access to the staff report until after a determination had been made. RSA 76:16-a III (Supp. 1973). Thereafter, the board furnished the information so that it was available at the time of rehearing. Although the plaintiff then had the burden of overcoming a finding already made, we cannot say that on the facts of this case plaintiff was denied due process. K. Davis, Administrative Law Text §§ 2.09, 7.01 (1972).

*Appeals dismissed.*

All concurred.