In the Matter of STATE BANK CHAR-
TER APPLICATION OF the SECURI-
TY BANK, BUFFALO, Wyoming.

WYOMING BANK & TRUST COMPANY
OF BUFFALO, Wyoming,
Appellant (Petitioner),

v.

Dwight D. BONHAM, State Bank
Examiner, State of Wyoming,
Appellee (Respondent),

Security Bank of Buffalo, Wyoming,
Appellee (Applicant).

No. 5153.

Supreme Court of Wyoming.

Feb. 5, 1980.

Rehearing Denied Feb. 26, 1980.

William J. Kirven, Buffalo, and David D. Uchner, Cheyenne, for appellant.

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

1. Because the application for this bank charter was made in 1976, the cited law prevails rather than §§ 13–2–201 et seq., which were passed by the legislature in 1977 and which have dramatically altered the procedure for obtaining a state bank charter.

2. Section 13–44(c), W:S.1957, 1975 Cum.Supp.:

"(c) It shall be the duty of the state examiner to inquire into the adequacy of the capital structure proposed by the incorporators, the future earning prospects of the proposed corporation, the general character and ability of the incorporators, and the convenience and needs of the community to be served by the proposed corporation, and whether or not its proposed corporate powers are consistent with the purpose and requirements of the banking laws of this state. The state examiner shall be the sole judge as to whether or not a charter shall be granted, and he shall have authority either to approve or reject any certificate of incorporation. Before any application is approved or rejected the state examiner shall upon the request of five persons or upon examiner's own motion conduct

Kenneth G. Vines, Asst. Atty. Gen., and Henry A. Burgess, Sheridan, argued for appellees; John D. Troughton, Atty. Gen., on brief of appellee Bonham.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

RAPER, Chief Justice.

This case involves the issuance of a state bank charter by the State Bank Examiner (Examiner) after an investigation and a public hearing which were conducted in accordance with procedures established in § 13–44(c)[1], W.S.1957, 1975 Cum.Supp.[2] The question presented is essentially this: Where the Examiner conducts an investigation and public hearing into an application for grant of a new state bank charter and after the evidence has been presented to the Examiner by the parties participating in the hearing, if the Examiner then goes to the community where the new bank is to be located, without giving advance notice to

a public hearing in accordance with the Wyoming Administrative Procedure Act [§§ 9–276.19 to 9–276.33]. If he rejects the certificate of incorporation he shall return it to the incorporators or their representative and it shall not be filed or recorded in any office of this state. Upon the approval of the certificate of incorporation, the state examiner shall endorse thereon his certificate of approval and upon compliance with said examiner's requirements, if any, he shall then issue a charter to such corporation bearing the seal of his office, which charter shall be deemed sufficient authority for such corporation to commence the business of banking. The state examiner shall file in his office one of the triplicate originals of the articles of incorporation, and one in the office of the secretary of state, and he shall return one to the incorporators or their representative. When the charter is either approved or rejected the state examiner shall issue findings of fact and conclusions of law regarding the requirements set forth herein. The state examiner may assess in advance against the applicants for the hearing or upon his own motion against the applicant for the charter, a fee of not in excess of $1000 to defray costs of the hearing, which fee shall be in addition to that provided in section 13–45 of the statutes."

the parties, and inquires into matters relating to the application, may a party aggrieved by the ultimate decision of the Examiner complain on appeal to the district court that the Examiner's independent investigation was illegal and invalidates the grant of the new bank charter? An additional concern is that while the Examiner contacted the parties during his visit he did not place in the record the results, if any, of his investigation nor were the parties afforded an opportunity sua sponte by the Examiner to rebut what he may have learned during his visit.

We will hold that this issue cannot be raised for the first time on appeal under the circumstances of this case and that activities of the Examiner described by appellant were not "misconduct" in the sense intended by Rule 12.08, WRAP. We will affirm.

On August 24, 1976, an application to organize and operate a third bank in Buffalo, Wyoming was filed by the applicant-appellee Security Bank of Buffalo, Wyoming, with the office of the State Bank Examiner. The protestant-appellant Wyoming Bank & Trust Co. of Buffalo, Wyoming, as well as others who did not join in this appeal, protested the application and requested a public hearing. On December 5, 1977, a hearing was held by the Examiner at which evidence for and against the application was received. After this hearing, but prior to a decision, the Examiner made a trip to Buffalo, Wyoming. The appellant described the activities of the Examiner on that trip thus:

"Subsequent to the hearing, but prior to a formal decision, Dwight Bonham conducted a number of informal investigations relating to the application. These investigations consisted, *inter alia*, of a trip to Buffalo and Sheridan, Wyoming, on March 29, 1978, to discuss with residents and businesses of Buffalo the need for a third bank; an investigation into the proposed location of the applicant bank and the economy of the Buffalo community; private conferences with various directors and shareholders of the community's existing banks; conversations with county employees; private conferences with applicant organizers; and the acceptance of a dinner invitation by one of the applicant organizers, Mr. Robert Ferril, who was and is president of the Bank of Commerce in Sheridan, a bank controlled by the Scott family which controls the application bank as well as the Security Bank in Sheridan. * * * Mr. Bonham made inquiries concerning past history, ownership and control of the established banks in Buffalo, including particular stock acquisitions. * * * Mr. Bonham made inquiries concerning the possible rejection of loan applications by qualified applicants, such information having been allegedly supplied by out-of-town bankers whose names Mr. Bonham would not supply. * * * Mr. Bonham also made statements to certain members of the community during his visit that the organizers appeared to be intelligent and willing individuals who deserved a chance to risk their money on the venture of establishing a new bank in Buffalo. * * * The State Examiner did not call for nor did he hold any subsequent hearing following these off-the-record investigations."

On July 5, 1978, the Examiner issued his Findings of Fact, Conclusions of Law, and Decision and Order approving and granting the application for a bank charter. On August 3, 1978, the appellant filed a petition for review in the district court. Prior to a hearing on that petition, appellant made application to the district court for leave to present additional evidence and further to take the deposition of the Examiner pursuant to Rule 72.1(h), W.R.C.P.[3] The district court denied the appellant's Rule 72.1(h) request and entered judgment affirming the decision of the Examiner. The appellant then brought its appeal to this court as permitted by the Wyoming

---

3. Rule 72.1(h) is now found, unchanged, in the Wyoming Rules of Appellate Procedure, Rule 12.08.

Administrative Procedure Act. The issues are somewhat narrowed from those presented to the district court:

"1. Were the conversations and personal contacts made by the Wyoming State Bank Examiner after the hearing on the application for a state bank charter improper because such conversations and personal contacts constituted extra-record evidence, not made a part of the record, so that appellant bank was not given an opportunity to examine and refute such evidence?

"2. Was the visit to Buffalo, and Sheridan, Wyoming, and view of the community conducted by the Wyoming State Bank Examiner after the hearing on the application for a state bank charter, improper because such a view of the area constituted extra-record evidence, not made a part of the record, so that appellant bank was not given an opportunity to examine and refute such evidence?

"3. Are extra-record conversations and extra-record views of the premises and area impermissible unless such activities are officially noticed in accordance with the Wyoming Administrative Procedure Act?

"4. Can an administrative hearing officer base a decision in whole or in part on evidence, the source of which he refuses to disclose to the parties, without violating minimal standards of due process?

"5. Appellant having demonstrated that the State Examiner had private post-hearing interviews with some identified and some unidentified persons relating to the granting of the bank charter application, did the district court commit reversible error in denying Appellant's application to develop further evidence on the issue of misconduct of this administrative hearing officer?

"6. Did the district court err in refusing the application of Appellant to take the deposition of the State Bank Examiner and other agents and representatives of the State Examiner's office?

"7. Did the district court err and deny due process to Appellant in entering its Judgment on May 3, 1979, confirming the decision of the State Bank Examiner when the district court acknowledged in its Judgment that the Appellant was not given an opportunity to test or rebut the post-hearing information privately gathered by the State Examiner?

"8. Was the decision of the State Bank Examiner reached in conformity with the law?

"9. Based upon the evidence appearing in the record and in the State Bank Examiner's findings of fact, was the decision granting a charter to Security Bank arbitrary, capricious, and an abuse of discretion?"

The issues described in items (1) through (5) above were never called to the attention [4] of the Examiner and as said in *Wyoming Bancorporation v. Bonham*, Wyo.1974, 527 P.2d 432, 439:

"Unless adverse parties appearing before administrators or administrative bodies are required to frame issues and contentions for decision by the hearing body, such hearings will become meaningless charades necessitating upon appeal what would be factually a trial de novo contrary to the purpose and philosophy of the Administrative Procedure Act. For a reviewing court to reach an asserted proposition of an appellant the issue must have been raised for decision before the administrative body or administrator responsible for the decision. This is admirably expressed by the United States Supreme Court in the case of *United States v. L. A. Tucker Truck Lines,* 344 U.S. 33, 73 S.Ct. 67, 68–69, 97 L.Ed. 54, where it is said:

" 'We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the pro-

---

4. At least two vehicles exist to have achieved this: a motion to reopen, stating the reasons therefor; and a petition for rehearing, stating the reasons therefor. This listing is not intended to be exhaustive.

ceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the court. \* \* \*'

"See additionally, *Moog Industries v. Federal Trade Commission,* 355 U.S. 411, 78 S.Ct. 377, 380, 2 L.Ed.2d 370, rehearing denied 356 U.S. 905, 78 S.Ct. 559, 2 L.Ed.2d 583, and *United States v. Elof Hansson, Inc.,* 48 C.C.P.A. 91, 296 F.2d 779, 781, certiorari denied 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95, following *Tucker Truck Lines,* and with a further discussion. Further, objections must have had particularity as to properly identify the question and to give notice of the contention, *National Labor Relations Board v. Seven-Up Bottling Co.,* 344 U.S. 344, 73 S.Ct. 287, 290–291, 97 L.Ed. 377. Thus, in our view the competition as between these two banks was never properly posed to the examiner and we cannot now consider or order him to consider it. There must be some finality even in administrative proceedings, as in judicial proceedings, *Martellaro v. Sailors,* Wyo., 515 P.2d 974, 976."

 This rule is nothing more than a rephrasing of the standard appellate rule that issues not raised before the trial court will not be considered for the first time on appeal. *Scherling v. Kilgore,* Wyo.1979, 599 P.2d 1352; and see generally West's Wyoming Digest, Appeal and Error, 
 In the administrative setting the agency is the equivalent of a trial court. We are as committed to its application in the administrative setting as we are in the usual judicial setting. It is a rule of almost universal application. *Hill v. Dept. of Labor and Industries,* 1978, 90 Wash.2d 276, 580 P.2d 636, 639; *Saxon v. Division of State Lands,* 1977, 31 Or.App. 51, 570 P.2d 1197, 1199; *Paras v. City of Portsmouth,* 1975, 115 N.H. 63, 335 A.2d 304, 309; and see generally West's Digest System, Administrative Law Appellant has not asserted that it brings us a question concerning jurisdiction or other fundamental matter nor that the issue is one of great public importance. Our independent inquiry into the question does not indicate it is such a question. For this reason we will not consider the issues (1) through (5) described above.[5]

Appellant asserts as issues (6) and (7) that the district court erred in not granting the application of appellant to introduce additional evidence to the district court in accordance with Rule 72.1(h),[6] supra, and in not permitting the appellant to take the Examiner's deposition in furtherance of that application. Appellant asserts that this evidence should have been taken by the court because this case is one " \* \* \* involving misconduct of some person engaged in the administration of the law affecting the decision." As presented to this court on brief, appellant's argument in this regard is:

"All of the requirements of Rule 72.-1(h) were met by appellants. Timely application was made by Appellant in its Application For Leave to Present Additional Evidence dated October 24, 1978. In particular, the application requested the appellant be allowed to take the deposition of Dwight D. Bonham, the Wyoming State Bank Examiner, and other

---

5. For a general overview of this sort of question, see Annot., 18 A.L.R.2d 552 (and Later Case Service).

6. Rule 72.1(h), W.R.C.P.:

"(h) *Presentation of Evidence.* If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material, and there was good reason for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may adhere to or modify its findings and decision after receiving such additional evidence, and shall supplement the record to reflect the proceedings had and the decision made. *Supplemental evidence may be taken by the court in cases involving fraud or involving misconduct of some person engaged in the administration of the law affecting the decision. In all cases other than contested cases additional material evidence may be presented to the court.*" (Emphasis added.)

agents and representatives of his department. The application was based upon pleadings filed within the District Court and affidavits to be submitted later. Appellant then filed its Submission of Affidavits in Support of Application For Leave to Present Additional Evidence on December 26, 1978. Affidavits of Robert W. McBride, Jennie F. Chenoweth, and Donald P. Kraen were filed therewith. Both the pleadings filed with the District Court and the additional Affidavits were sufficient to show that there was additional evidence not presented at the administrative hearing that was material to the question of granting the bank charter. There was good reason for the additional evidence not having been introduced in the proceeding before the agency: all such evidence, namely the extra-record conversations and investigations by Mr. Bonham, was gathered after the administrative hearing, or otherwise without appellant's knowledge.

"Rule 72.1(h) generally requires that additional evidence be brought before the agency when such is allowed by the district court. However, where if misconduct or fraud has been engaged in by an administrator, the evidence can be taken directly before the Court.

"The decision to allow additional evidence to be presented is not discretionary with the Court; it is mandatory. Such evidence *shall* be presented if (1) the evidence is material; and (2) there is good reason for failure to have presented it in the agency proceedings. A somewhat lesser standard is required *only* in uncontested cases. *Johnson vs. Schrader,* 502 P.2d 371, 376 (Wyo.1972), reh. 507 P.2d 814 (Wyo.1973)." (Emphasis in original.)

■■■■ However, appellant jumps to too many conclusions too fast. In order to prevail in the Rule 72.1(h) application, appellant has to show to the *satisfaction* of the

district court that, (1) the evidence was material, and (2) that there was good reason for failure to present the evidence in the proceeding before the agency. While we are not entirely convinced that the appellant demonstrated the materiality of the evidence, we think it evident beyond a question that the appellant failed and continues to fail to show that there was *good reason* for his failure to present the evidence before the agency. Appellant is satisfied, and expected the district court as well as this court to be satisfied, with his explanation that because the Examiner's peregrinations and conversations occurred *after* the public hearing, therefore they have good reason for failing to raise the matter with the Examiner. As we mentioned before, there are perhaps several vehicles which appellant could have used for this purpose. We think it quite evident as well, that this was a matter which the Examiner should have been given an opportunity to address at the administrative level and take whatever corrective action he deemed necessary [7] —which could then have made the question one appropriate for judicial review.

It is clear that appellant knew of the Examiner's visit the day it occurred and it took no corrective action until a final order issued from the Examiner. While it plays no real part in our decision, these facts suggest that appellant had no great concern about the visit, perhaps thinking it was as much to its benefit as to that of the appellee, until it was clear the decision was adverse to it. As in almost all appellate situations, once a decision is made or judgment entered it is then too late to raise issues that were foregone at earlier proceedings. We hold that the record demonstrates why appellant failed to satisfy the district court that there was good cause for failure to present the evidence in question to the Examiner, and we are equally as unconvinced.

---

7. In so stating, we are not approving the activities of the Examiner. Factually, there is no great contest involved in this case. The Examiner did not deny that he traveled to Buffalo and inquired into the matter. Indeed, he made his presence and his purposes known to the appellant at the time of his visit and in fact called upon counsel for appellant to inform him of his presence and advise the purpose of his visit. The visit was not made in any surreptitious fashion.

The appellant points out that the district court *may* take evidence where agency misconduct is at issue. Appellant has merely denominated the Examiner's actions as "misconduct" and apparently expects that view to be adopted without more. From the state of this record, an assertion that there is misconduct on the Examiner's part is misconceived.[8] Such an independent investigation as that conducted here may have been unwise, but no bad faith was evident. The term "misconduct," when related to removal from public office, carries with it a serious connotation of misbehavior, incompetency or inability or unfitness of an incumbent to hold office. *People ex rel. Emerson v. Shawver,* 1924, 30 Wyo. 366, 222 P. 11. This appears to be the only Wyoming precedent dealing with "misconduct" by a public officer.

■ This court has not had occasion to define "misconduct" as used in Rule 12.08, WRAP. Webster defines "misconduct" as mismanagement especially of governmental or military responsibilities; intentional wrongdoing; deliberate violation of a rule of law or standard of behavior especially by a government official; malfeasance; bad conduct. Cases dealing with the question appear to have adopted quite generally the Webster definition. *Hatfield v. New Mexico State Board of Registration for Professional Engineers and Land Surveyors,* 1955, 60 N.M. 242, 290 P.2d 1077, 1080; *Bailey v. Examining and Trial Board of Police Department of City of Helena,* 1912, 45 Mont. 197, 122 P. 572, 574. The word implies wrong intention and not mere error of judgment. *In re Ash,* 1973, 113 N.H. 583, 311 A.2d 304, 306; *Carroll v. Alabama Public Service Commission,* 1968, 281 Ala. 559, 206 So.2d 364. See also "Misconduct," 27 Words and Phrases 465, et seq. and pocket part. The word is ill-chosen to label the Examiner's activities in disposition of the administrative proceedings, as outlined in

the Petition for Review. No need for relief is indicated.

■ In any case, misconduct, in the sense intended by Rule 12.08, WRAP, was not shown in the district court, nor is it now shown to this court, nor has any authority been cited or cogent argument made that what the Examiner did was "misconduct." Thus, we hold appellant has failed to demonstrate error by the district court in denying the Rule 72.1(h) motion.

Appellant's issues (8) and (9) were not briefed nor were they argued before this court, and we will not consider them further. *Scherling v. Kilgore,* supra.

Affirmed.

McCLINTOCK, Justice, dissenting, with whom ROSE, Justice, joins.

I do not say that it was improper for the state examiner to seek further information in this case. That right was expressly conferred upon him by the then applicable statute, § 13–44(c), W.S.1957 (now repealed), which required him "to inquire" into the various aspects of the charter application, including the "convenience and needs of the community to be served by the proposed corporation," and declared him to be the "sole judge as to whether or not the charter shall be granted." However, of equal pertinence is the direction of the Wyoming Administrative Procedure Act that one presiding at a hearing in a contested case shall not directly or indirectly consult with outside persons *"except upon notice and opportunity for all parties to participate."* Section 9–4–111, W.S.1977. (Emphasis added.) The majority of this court mildly disapprove the examiner's independent investigation, terming it "unwise", but hold that it was not misconduct as that term is used in Rule 12.08 WRAP, permitting the reviewing court to take supplemental evidence in cases "involving misconduct of some person

---

8. Such an inquiry as that made herein appears plainly to be contemplated by § 13–44(c), supra. This court discussed the question quite thoroughly in *First National Bank of Thermopolis v. Bonham,* Wyo.1977, 559 P.2d 42. While we do not retreat in any manner from the sense

of that opinion, we wish to be equally plain that such an issue must be first called to the attention of the administrative agency for consideration there before presented for judicial review, if that is possible; and here it was.

engaged in the administration of the law affecting the decision." I disagree.

What has happened in this case is that the examiner, being dissatisfied with the state of the record as developed at the adversary hearing, took it upon himself to make an independent investigation. But he neither gave notice to the parties of his intention nor an opportunity to participate. He did not submit a report on the facts which he found and there was no possibility for the protestant to test the reliability of facts so found or to present evidence in rebuttal thereof. This was a material departure from the examiner's own actions considered by this court in *First National Bank of Thermopolis v. Bonham,* Wyo., 559 P.2d 42 (1977). In that case the examiner had given notice of his intention to have his senior examiner make further investigation and although he did not invite the parties to participate, he did furnish them with a report of the findings and permitted cross-examination thereon, as well as the right to present evidence in rebuttal of such findings. This court in a divided opinion sustained the allowance of the charter, but with this observation:

" . . . As long as it [the investigation] is not done secretly, *the information gained is made available to the parties and an opportunity to rebut afforded,* we can detect no difference as to when it is done." (Emphasis added.) 559 P.2d at 46.

While the examiner did in the present case talk with persons connected with the protesting bank so that it cannot be said that the investigation was made secretly, it is also true that he never orally or in writing presented protestants with the information which he gathered and they had no opportunity whatsoever to rebut. Such a procedure is directly condemned in *Interstate Commerce Commission v. Louisville and Nashville Railroad Company,* 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431 (1912). When the Commission's decision was attacked in court the government attempted among other things to sustain action of the Commission on the basis of information independently gathered by it, even though not formally presented at the hearing. The court recognized the importance of the Commission's investigative functions, but said (227 U.S. at 93, 33 S.Ct. at 187–88):

" . . . [T]he more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown but presumptively sufficient information to support the finding."

There are many authorities that condemn the procedure followed by the examiner in this case. One illustrative case cited by appellant is *Ohio Bell Telephone Company v. Public Utilities Commission of Ohio,* 301 U.S. 292, 300, 57 S.Ct. 724, 729, 81 L.Ed. 1093, (1937), where the Commission sought to use information which it had acquired over the years but which was not put in evidence. The court said:

" . . . The putative debtor does not know the proofs today. This is not the fair hearing essential to due process. It is condemnation without trial."

The Supreme Court of California, in *English v. City of Long Beach,* 35 Cal.2d 155, 217 P.2d 22, 24, 18 A.L.R.2d 547 (1950), said:

" . . . The action of such an administrative board exercising adjudicatory functions when based upon information of which the parties were not apprised and which they had no opportunity to controvert amounts to a denial of a hear-

ing. [Citing cases.] Administrative tribunals which are required to make a determination after a hearing cannot act upon their own information, and nothing can be considered as evidence that was not introduced at a hearing of which the parties had notice or at which they were present. [Citing cases.]"

Two expressions of the New Jersey courts are pertinent. In the first, *Giordano v. City Commission of City of Newark,* 2 N.J. 585, 67 A.2d 454 (1949), the Supreme Court said:

"No determination can be permitted to rest upon undisclosed findings or information dehors the record. If such could be, the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the board, and due process would be flouted. The rights of the parties can only be protected, both in the trial tribunal and on review, by a full disclosure on the record of the facts relied upon for the board's findings."

In *New Jersey State Board of Optometrists v. Nemitz,* 21 N.J.Super. 18, 90 A.2d 740, 745 (1952) the Appellate Division of the Superior Court said:

"The very essence of due process is the opportunity to hear and controvert the evidence upon which the issue presented is to be decided. Factual knowledge on that issue, expert or otherwise, of the triers of the facts, is not evidence and cannot form the basis in whole or in part of the ultimate judgment. *Morgan v. U. S.,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936)."

If the decision has been arrived at through improper action of the administrative agency, the question is not whether there is evidence in the record that would sustain the decision. Whatever were the facts sought out and developed by the examiner, it is clear that they were material to his decision and played an important part therein. This is established by the examiner's own affidavit submitted to the district court. He there states that he would have been delinquent in his duties had he not made the investigation; that the trip was "necessary to clarify matters of location, ownership and community development"; that upon his return to Cheyenne he again reviewed the transcript and summaries of counsel which, "with clarification received during Affiant's visit to Buffalo was more meaningful." He affirms that as a result of the trip he determined that "the location of the proposed bank was proper, that the proposed capital of the bank should be increased, and that more of the capital should be made available to resident directors. Affiant confirmed his conclusion that a third bank was needed in Buffalo."

The evil in such procedures as were here followed by the examiner is pointed out in *English,* supra, 217 P.2d at 24:

". . . The fact that there may be substantial and properly introduced evidence which supports the board's ruling is immaterial. Cf. *Ohio Bell Tel. Co. v. Public Utilities Comm.,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. A contrary conclusion would be tantamount to requiring a hearing in form but not in substance, for the right of a hearing before the administrative tribunal would be meaningless if the tribunal were permitted to base its termination upon information received without the knowledge of the parties. A hearing requires that the party be apprised of the evidence against him so that he may have an opportunity to refute, test, and explain it, and the requirement of a hearing necessarily contemplates a decision in light of the evidence there introduced."

I do not think it necessary for this court to reach the question whether there may have been a failure to afford constitutional due process. Without attempting a lengthy analysis of the objections to permitting an administrative agency to act upon its own information, not disclosed to the contesting parties, it is my conclusion that federal and state administrative procedure acts uniformly condemn such action. Section 9–4–111, W.S.1977 is the Wyoming legislature's attempt to prevent such action and to insure the fullest type of adversary hearing.

The examiner proceeded in violation of that statute and our Rule 12.08 WRAP permits the question to be raised independently in the district court.

I would not want to be understood as saying that such violation of the express mandate of the statute amounts to conduct justifying removal from office as was the question in *People ex rel. Emerson v. Shawver,* 30 Wyo. 366, 222 P. 11 (1924), and which decision appears to be the only one of this court dealing with definitions of misconduct. However, I consider the examiner's action to be within the Webster definition of misconduct as mismanagement of governmental responsibilities. In *Citizens' Insurance Co. of Pittsburgh v. Marsh,* 41 Pa. (Wright) 386, 394 (1861) it is said that "[m]isconduct is a violation of definite law." It has also been said that the term does not necessarily imply corruption or criminal intent. *Kesling v. Moore,* 102 W.Va. 251, 135 S.E. 246, 249 (1926).

*Carroll v. Alabama Public Service Commission,* 281 Ala. 559, 206 So.2d 364 (1968) appears to me to be definitely in point. In that case two members of a three-man commission had issued a certificate of convenience to an applicant without consultation or meeting with the third member. The applicable statute, Tit. 48 § 82, Code 1940, provided that the Commission's order should be taken as prima facie just and reasonable and " '[n]o new or additional evidence may be introduced in the circuit court except as to fraud or misconduct of some person engaged in the administration of this title and affecting the order.' " 206 So.2d at 366. The successful applicant argued to the reviewing court that the word "misconduct" as used in the statute was tantamount to fraud. That court disagreed and found that the failure of the Commission to act as a body constituted prejudicial error. Upon appeal the Supreme Court affirmed the reversal of the Commission order. Several definitions of misconduct are set forth in the opinion, including, "in usual parlance, a transgression of some established and definite rule of action." The court then held:

"It was misconduct for two members of the Commission to issue a certificate of convenience and necessity without meeting as a body and failing to notify the third member of the Commission that they were going to pass on and decide the matter."

In the case before us the examiner has violated a definite statutory requirement in that he has made his own investigation without inviting the interested parties to participate and in failing to make any report as to what he found in that investigation and permit cross-examination and rebuttal concerning it. This violation has not been approved by the majority but their conclusion that no misconduct was involved places an undue limitation on our rule permitting introduction of evidence of misconduct.

I have no quarrel with the general principle that "objections to the [procedures] of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts," *United States v. L. A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), and I would agree with the further statement therein that,

" . . . Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred *but has erred against objection made at the time appropriate under its practice."* (Emphasis added.)

To me, the italicized portion of this last quotation presents the crux of our problem. The question is, has Wyoming Bank & Trust Company failed to object to the improper procedure of the examiner at a time appropriate under the practice of the examiner. That practice must be consistent with the statutes of the state and the rules of this court. The only rule that I have been able to find is the rule that the district court may hear evidence concerning charges of misconduct. This rule is based on the practical view that there is little point in

arguing to someone who is proceeding in an improper manner that his actions amount to misconduct. As expressed in 2 Cooper, State Administrative Law, p. 623,

"If the proposed additional evidence is offered in an attempt to establish that the agency utilized improper procedures that are not disclosed by the administrative record, it would scarcely be fitting to ask the agency to hear and pass upon proofs of such alleged irregularities committed by the agency itself. The Revised Model Act, in recognition of the difficulty, provides: 'In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in court.' Such provisions are found in many of the state statutes."

Our state has not adopted such a statute but I can find no real difference between our Rule 12.08 WRAP and the model statutory provision as quoted by Professor Cooper.

In my opinion the appellant timely presented its claim of misconduct on the part of the examiner in the manner contemplated by our rule. I believe that it was entitled to full development of the facts. I therefore am of the opinion that the district judge has committed error in rejecting such evidence and has sustained the examiner's issuance of the application without full knowledge of facts that might have a material and important bearing upon the propriety of his procedures.

I would therefore reverse the case and remand the same with directions to proceed to take full evidence concerning the investigation conducted by the examiner, including examination of the examiner himself.