Merrimack
No. 80-160

# Town of Croydon

## v.

# Current Use Advisory Board

June 10, 1981

*K. William Clauson,* of Hanover, by brief and orally, for the plaintiff.

*Gregory H. Smith,* attorney general (*Andrew R. Grainger,* assistant attorney general, on the brief and orally), for the defendant.

GRIMES, C.J.   This appeal arises out of the Town óf Croydon's ongoing challenge to New Hampshire's current use taxation statute, RSA ch. 79-A (Supp. 1979). In *Blue Mountain Forest Ass'n v. Town of Croydon,* 117 N.H. 365, 380, 373 A.2d 1313, 1322 (1977), we held that the Blue Mountain Forest Association's (the Association) property in Croydon qualified for current use taxation as forest land. Thereafter, when the town refused to value the Association's land in accordance with the current use values established by the current use advisory board (the board), the Association brought a petition to compel the town to do so. The town defended that action by arguing that the current use values set by the board were only suggested values and not binding upon the towns. The town also contended that the values developed by the board were inconsistent with the requirements of RSA ch. 79-A (Supp. 1979) and therefore could not bind the towns. The trial court transferred the legal questions raised by the town to this court, and we held that the current use values promulgated by the board were mandatory. *Blue Mountain Forest Ass'n v. Town of Croydon,* 119 N.H. 202, 204–05, 400 A.2d 55, 57 (1979). We further held that the town could not challenge the values established by the board in that proceeding because the board was not a party to the litigation, but that the town could challenge the values "in an appropriate proceeding" against the board pursuant to RSA 541-A:7. *Id.* at 205, 400 A.2d at 57.

The town took its cue and, on April 27, 1979, brought a declaratory judgment action against the board challenging the current use values for forest land set by the board. After hearing four days of testimony, the Master (*John C. Fairbanks,* Esq.) ruled that the current use values in question were consistent with RSA ch. 79-A (Supp. 1979) and were not unreasonable. *Cann,* J., approved the master's recommendation, and the town appealed. We affirm.

RSA ch. 79-A (Supp. 1979) is designed "to encourage the preservation of open space land . . ." by providing "for valuation of land at current use levels rather than at the land's best and highest use." *Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. at 203, 400 A.2d at 56. (Citations omitted.) Following the enactment of RSA ch. 79-A (Supp. 1979) in 1973, the board established values for each category of land designated for current use treatment. The range of values prescribed by the board for forest land, the category of land involved in this case, was twenty to thirty-five dollars per acre. As of 1979, the valuation range for forest land established by the board had not changed. The issue on appeal is whether the twenty to thirty-five dollar valuation range is inconsistent with the spirit or letter of RSA ch. 79-A (Supp. 1979) or otherwise unreasonable.

The board arrived at the range of values for forest land through a two-step process. First, the board assigned a base value of ten dollars per acre to all non-productive land in New Hampshire on the premise that all land has some value. The board then took values for forest land (based on the land's productive capacity) developed by the University of New Hampshire's Institute of Natural and Environmental Resources, averaged those values to produce a valuation range of ten to twenty-five dollars per acre, and added the ten dollar per acre base figure to produce a current use valuation range of twenty to thirty-five dollars per acre. The town attacks both the method of arriving at this valuation range for forest land and the range of values itself. It seeks to value forest land in Croydon at fifty to seventy dollars per acre.

The town first challenges the range of values for forest land because that range is based upon the "average value of average acres" of forest land in New Hampshire. The town argues that there is no such thing as a "truly average acre" of forest land, that the board's range of values does not take into account the characteristics of particular parcels of land, and that the range of values does not provide an accurate means of determining the specific value of a specific tract of land.

■ Assuming *arguendo* that there is no such thing as an "average acre" of forest land, we still do not find that the board's use of average values renders the valuation range for forest land invalid. In the first place, the use of a range of values derived from average values makes sense from an administrative perspective. In this context, we note the master's reference to "the almost impossible task of determining values applicable to individual tracts as distinct from general state-wide application . . . ." Furthermore, the

use of a *range* of values still permits town assessors to take into account the unique qualities of each parcel of land being assessed and, within the limits of the range, to value the property accordingly. Thus, the objection that the characteristics and value of specific tracts of land are ignored under a scheme utilizing average values is obviated to the extent that it relates to parcels of forest land whose actual current use values fall within the twenty to thirty-five dollar per acre range.

We recognize that the actual current use value of some forest land may be less than twenty dollars per acre or greater than thirty-five dollars per acre, but that alone does not mean that a valuation system based on averages is unlawful. Indeed, to hold that the board must prescribe a range of values encompassing the current use value of every piece of forest land in the State, ranging from that with the lowest current use value to that with the highest, would be contrary to the purpose of RSA ch. 79-A (Supp. 1979), "which is to create a *statewide system of valuation* of land classified for current use taxation at a sufficiently low level so as to encourage the land's preservation as open space." *Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. at 204–05, 400 A.2d at 57. (Emphasis added.) The town's suggested "system" hardly seems a "statewide system."

■ We conclude that the use of a valuation range based on average values is a sensible approach to the task of valuing all of New Hampshire's forest land, and one consistent with the intent of RSA ch. 79-A (Supp. 1979). Accordingly, we hold that the board was well within its discretion in utilizing this approach. For the same reasons, we reject the town's argument that the current use taxation statute does not authorize a thirty-five dollar per acre limitation on current use values.

The town next contends that the board's method of arriving at current use values for forest land does not reflect all of the criteria set forth in RSA 79-A:2 XI (Supp. 1979). RSA 79-A:2 XI (Supp. 1979) defines the "use value" of open space land as:

> ". . . the valuation per acre which the land would command if it were required to remain henceforth in an open space qualifying use. This valuation will be determined by the assessor in accordance with the recommendations of the board for the class, type, grade and location of land under consideration and its income-producing capability."

The town specifically argues that the board's method of valuation

wrongly ignores the "grade" and "location" of the land. We cannot agree.

■ There was testimony by Theodore Natti, the State's chief forester and the secretary of the current use advisory board, that all of the statutory criteria were taken into account in the income-production formula used by the board in developing the current use values for forest land. Mr. Natti specifically testified that the grade and location of land is reflected in the net stumpage prices incorporated in the formula. There was also testimony that the average values derived by the board poorly reflected the grade and location criteria. Conflicts and contradictions in the testimony, however, are for the trier of fact to resolve. *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H 28, 30, 424 A.2d 1141, 1142 (1981); *Guy v. Hanley*, 111 N.H. 73, 76, 276 A.2d 1, 3 (1971). There was sufficient credible evidence to support the master's finding that the range of values for forest land established by the board adequately reflect all of the criteria set forth in RSA 79-A:2 XI (Supp. 1979). Consequently, that finding must stand. *Automated Housing Corp. v. First Equity Associates, Inc.*, 121 N.H. 177, 180, 428 A.2d 886, 888 (1981); *Duby v. Osgood*, 120 N.H 356, 357, 415 A.2d 326, 326 (1980).

■ The town also argues that the board erred by not utilizing the comparable sales method of property valuation in arriving at the current use values for forest land. We disagree.

■ There are three generally-accepted methods of valuing real estate: the replacement cost approach, the comparable sales method, and the capitalization of income approach. *See Garland & LaChance Const. Co. v. City of Keene*, 117 N.H. 920, 921, 379 A.2d 1259, 1260 (1977); *Paras v. Portsmouth*, 115 N.H. 63, 67, 335 A.2d 304, 308 (1975). The decision as to which method to use in assessing particular property is left to the individual or the governmental body responsible for valuing the property, and we will not overturn that decision if there is a reasonable basis for using the valuation method chosen. *See Brickman v. City of Manchester*, 119 N.H. 919, 920, 409 A.2d 1328, 1329–30 (1979); *Garland & LaChance Const. Co. v. City of Keene supra; Paras v. Portsmouth, supra* at 68, 335 A.2d at 308.

As we have already stated, the purpose of RSA ch. 79-A (Supp. 1979) is to prevent the conversion of open space land to more intensive use, which normally results from a system of property taxation geared to market value. *See Blue Mountain Forest Ass'n v. Town of Croydon*, 117 N.H. at 377, 373 A.2d at 1320; RSA 79-

A:1 (Supp. 1979). The market value of open space land is often influenced by the land's potential value for uses other than as open space. *See Kentucky Bd. of Tax Appeals v. Gess*, 534 S.W.2d 247, 249 (Ky.1976). Thus, comparable sales of property may well reflect the very market forces that the current use taxation statute is designed to eliminate from consideration in the taxing process. *Id.* The board could reasonably have concluded that the use of the comparable sales approach would be inconsistent with the intent of RSA ch. 79-A (Supp. 1979) and, therefore, an inappropriate method of valuing land qualifying for current use treatment. RSA 79-A:2 XI (Supp. 1979) does not require the board to consider comparable sales in determining current values, and we will not substitute our judgment for that of the board in the circumstances presented.

■ The town's final arguments relate to the board's alleged failure to conduct an annual review of current use values as required by RSA 79-A:4 I (Supp. 1979) and to the values themselves. It is unclear from the record whether the board has actually conducted annual reviews since 1973. It is undisputed, however, that in 1979 the board reviewed the current use values for forest land and, on the basis of that review, recommended that those values remain the same. If the recommended values for 1979 are sustainable, the fact that the board may not have conducted annual reviews between 1974 and 1978 is immaterial.

■ The town, however, takes issue with the current use values recommended by the board for 1979. The town specifically contends that the board's use of the capitalization of income formula in valuing forest land is unreasonable because that formula ignores the actual value of the underlying land. The town also argues that the board failed to consider the effects of inflation in arriving at its recommended values for 1979 and that those values, which have not changed since 1973, are unreasonably low.

The challenge to the board's method of valuation on the ground that it does not take into account the value of the underlying land is ill-founded. The capitalization of income formula is not supposed to incorporate the value of the underlying land. Rather the capitalization of income approach is, as its name implies, a method of valuing property by estimating the *income* "derived or derivable from the property by its present or potential owner." 1 J. BONBRIGHT, VALUATION OF PROPERTY 230 (1st ed. 1937).

We also reject the town's argument regarding inflation. For purposes of applying the capitalization of income formula in the

1979 study on which the board's recommendations were based, the 1973 stumpage prices were increased fifty percent, annual management costs were increased twenty-five percent, and the interest rate was increased from eleven percent to twelve percent. Thus, the 1979 report clearly takes inflation into account to some extent.

The town argues, however, that the increases in price were based upon past (1978) prices rather than projected future prices and that, therefore, the capitalization of income formula as applied by the board does not capitalize the present value of *future* net income. Even assuming that the town is correct, we cannot say that the use of projected 1979 stumpage prices instead of 1978 prices would have resulted in significantly different values, especially considering that annual management costs, which ultimately reduce the income figure based on stumpage prices, also would very likely have increased in 1979 and therefore would have offset any increase in stumpage prices to some extent.

We have considered the remaining arguments raised by the town regarding the validity of the current use values for forest land established in 1979 and conclude that they do not merit discussion.

■ We recognize that the board's 1979 study might well justify increasing the current use values for forest land. Nevertheless, we cannot say that the information produced in the 1979 study compelled the board to do so. We concur in the master's finding that the board's recommended values for 1979 were "the result of [the board's] considered judgments . . . ." Consequently, we hold that the current use values for forest land established by the board in 1979 are neither unreasonable nor illegal so as to render them invalid. These values are binding on the towns, *Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. at 204–05, 400 A.2d at 57, and the plaintiff should proceed forthwith to value forest land in Croydon in accordance with them.

We do, however, remind the board of its statutory obligation to conduct an *annual* review of current use values. RSA 79-A:4 I (Supp. 1979). The board should take care to insure that the range of current use values keeps pace with inflation and accurately reflects the actual current use value of land qualifying under the statute. *Cf. Estate of Cargill v. City of Rochester*, 119 N.H. 661, 669, 406 A.2d 704, 709 (1979), *appeal dismissed*, 445 U.S. 921 (1980). With this caveat in mind, the judgment below is

*Affirmed.*

All concurred.