Hillsborough
No. 6648

BARTAGE, INC.

v.

MANCHESTER HOUSING AUTHORITY

March 29, 1974

204

*McLane, Carleton, Graf, Greene & Brown (Stanley M. Brown* orally) for the plaintiff.

*Craig & Wenners* and *Joseph F. McDowell III (Mr. McDowell* orally) for the defendant.

GRIMES, J. The main issue the court is asked to decide is whether evidence of reproduction cost is admissible as an element or circumstance to be considered in arriving at the fair market value of condemned property. This issue as well as defendant's exceptions to a failure to grant a requested instruction and to the exclusion of evidence of repairs after condemnation were reserved and transferred by *Dunfey*, J., after a jury trial with a view resulted in a $145,000 verdict for the plaintiff.

Plaintiff owned the Bartage Hotel which was situated on 10,350 square feet of land located on Pine Street in downtown Manchester. The Bartage, built in 1892, boasted a restaurant, lounge, and office space on the first floor and 52 rentable rooms for permanent and transient guests on the upper three floors, but had a high vacancy rate. It was located in a depressed area where other property had been taken over by the Manchester Housing Authority. On October 6, 1969, the Bartage was condemned by the authority in a petition for condemnation brought pursuant to RSA ch. 203, ch. 205 and 4:30-36.

At trial, one expert called by plaintiff valued the property at $130,000 and another expert valued it at $150,000. These estimates were arrived at by considering three standard approaches to valuation. The comparable sales method produces an estimate of value based on comparisons with

and adjustments to sales and offerings for sale of similar properties in the area. The income approach is a determination of what value the property's net income will support based on a capitalization of net income. The cost approach, at issue on appeal, is figured by adding to the value of the land without buildings the cost of reconstructing the buildings as adjusted by subtracting an allowance for physical, economic and functional depreciation of the buildings. As applied to a valuation of the Bartage, these three factors depreciated the cost of reproduction an estimated 80% (T. 130). *See* American Institute of Real Estate Appraisers, The Appraisal of Real Estate 63-70 (4th ed. 1964).

Using these three methods, plaintiff's two appraisers arrived at six estimations of value ranging between $126,500 and $168,000. In choosing their best estimates, they arrived at the $130,000 and $150,000 figures respectively. Both experts considered the market data approach most accurate in valuing this property and one expert testified that the cost approach established merely the "upper limit" of what a buyer would pay for the property. All of the testimony on the methods and the values was introduced as a foundation to support the experts' final opinions.

In this State, the "rule of value permits all relevant factors to be received for the formation of the finding in analysis an opinion of the trier of fact." *Trustees & c. Academy v. Exeter*, 92 N.H. 473, 486, 33 A.2d 665, 673 (1943); *Fusegni v. Portsmouth Housing Authority*, 114 N.H. 207, 317 A.2d 580 (1974).

The testimony objected to was offered by witnesses whose qualifications as experts were conceded by the defendant and accepted by the trial court. The testimony provided not the sole or primary basis for their opinion, but background information as to their appraisal techniques. It was subject to cross-examination. The jury was instructed that any method used which would not influence a willing buyer and not be reflective of market value should be rejected as not legally applicable to determining the issue of value. The cost of reconstruction

figures were adjusted for three types of depreciation and were not inconsistent with estimates derived from other methods. The instructions to the jury emphasized and re-emphasized that fair market value was the sole test to be applied. We hold it was not error for the trial court, in its discretion, to admit the testimony into evidence.

Defendant contends that the trial court should have granted its request that the jury disregard any evidence of increase in value if caused by acquisition of properties in the neighborhood by the defendant for the purpose of demolition. One of the experts testified that values in the area were increasing and, using a plan, referred to a shopping center, a new courthouse, and investment by a bank and a utility company. It appears that the only building included in the area which was included in the same project as the Bartage was a fire station. There was no evidence that the defendant's acquisitions had in fact added to the values in the area, and the failure to give the instruction in this case was not error. *Fusegni v. Portsmouth Housing Authority,* 114 N.H. 207, 317 A.2d 580 (1974).

Defendant's final contention is that evidence of repairs it made to the building after condemnation was improperly excluded because it tended to contradict plaintiff's evidence that the property was kept in good condition. The plaintiff was informed in 1966 that the property would be taken and that it would be unwise to improve the buildings. The property was not taken until 1969. The defendant was not prevented from showing, as it did, the physical condition of the premises at the time of taking. The exclusion of cost of repairs made after condemnation was not error. *See Berry v. State,* 103 N.H. 141, 146-47, 167 A.2d 437, 441 (1961).

*Exceptions overruled.*

All concurred.