Hillsborough
No. 87-149

## MANCHESTER HOUSING AUTHORITY

v.

## MARK E. REINGOLD & a.

July 8, 1988

*Craig & Wenners P.A.*, of Manchester (*William H. Craig* and *Gary L. Casinghino* on the brief, and *Mr. Casinghino* orally), for the plaintiff.

*Emile R. Bussiere P.A.*, of Manchester (*Emile R. Bussiere* and *Daniel J. Kalinski* on the brief, and *Mr. Bussiere* orally), for the defendants.

BROCK, C.J. The plaintiff, the Manchester Housing Authority (hereinafter MHA or housing authority), appeals from a jury verdict awarding the defendants, the Reingolds, damages for property that the housing authority acquired through eminent domain. For the reasons that follow, we affirm.

The Reingolds owned property consisting of a parcel of land and attached buildings in downtown Manchester. On April 27, 1982, MHA filed a declaration of taking with respect to the property. Following an assessment of damages by the New Hampshire Board of Tax and Land Appeals, both MHA and the Reingolds appealed to the superior court, pursuant to RSA 498-A:27, for a trial *de novo* on damages. Prior to trial, each party moved to exclude the expert testimony that the other proposed to offer on the issue of fair market value as of the date of the taking. The Trial Court (*M. Flynn*, J.) ruled that the parties' expert testimony was admissible, with limitations not pertinent here.

At trial, the housing authority offered the testimony of appraiser Robert LaPorte, who had inspected the property in April 1981, prior to the taking. LaPorte estimated the fair market value of the property to be $99,500. In LaPorte's opinion, the highest and best use of the property, which had been damaged by fire in January 1981, was development of the land, following demolition of the buildings. Using the market data, or comparable sales, method,

which establishes value with reference to the selling prices of similar property, LaPorte estimated the fair market value of the land to be $138,000, and then subtracted $41,000, representing the estimated cost of demolition. An adjustment of the resulting $97,000 figure, to account for the property's Manchester location, produced the $99,500 estimate of property value as of the date of the taking.

The Reingolds offered the testimony of appraiser Joseph Kenney, who had inspected the property in September 1982, after the taking. Kenney estimated the fair market value of the property to be $200,000. Unlike LaPorte, Kenney determined that the highest and best use of the property was for retail sales, once the buildings had been remodelled, and his method of appraisal was different.

Kenney used a combination of the comparable sales method, which LaPorte had used, and a modification of the reproduction cost method. He testified that he was unable to identify similar properties in Manchester that would permit his appraisal on the basis of the comparable sales method alone, and he acknowledged that the property's fire-damaged condition contributed to his difficulty in that respect. He also chose not to use the income method of appraisal, which determines value on the basis of the property's net operating income. Kenney therefore used the comparable sales method in appraising only the land, which he determined to have a value of $134,000. To this figure, he added the value that he attributed to the buildings.

Kenney testified that the value of the buildings was $67,000. He arrived at this figure by first determining that, at the time of the taking, the cost of reproducing the "shells" alone, without plumbing and other "mechanicals," would be $332,860. He then subtracted $265,860 for depreciation, arriving at a value of $67,000, which, when added to the value attributed to the land, produced a total property value of $201,000, or approximately $200,000.

The court instructed the jury on its responsibility to determine the property's fair market value on the basis of all evidence, and not merely the opinions of the parties and their expert witnesses. The charge provided the following explanation of the reproduction cost method:

> "The law of New Hampshire permits the use of reproduction costs of a structure less depreciation as evidence of its market value where the structure has special characteristics not found in comparable properties.
>
> There was evidence that no [sales of] land and buildings could be found in the City of Manchester which possessed comparable age, style, and physical condition to that of the

defendant's buildings as they existed on the date of taking on 4-27-82, the physical conditions of which there was evidence—was evidence of some fire damage, also evidence of the lack of heating, plumbing, or electrical in the buildings as they existed at the date of taking. Therefore, if you find that the buildings possessed special characteristics for which no comparable [sales of] properties could be found in the City of Manchester, you may use reproduction costs less depreciation as an element or a circumstance to be considered along with other circumstances in arriving at a proper award of just compensation."

(Bracketed material added by trial court after, and as a consequence of, a bench conference.) The jury returned a verdict for the Reingolds in the amount of $175,000.

On appeal, the housing authority raises essentially two issues. First, MHA asserts that the trial court erred in admitting the Reingolds' expert testimony, and in giving the attendant jury instruction with respect to buildings that did not possess the uniqueness or special characteristics that would make admission of reproduction cost evidence appropriate. Second, MHA asserts error in the trial court's suggestion, during instructions to the jury, that the fire damage and physical deterioration gave the buildings special characteristics that made appropriate the jury's consideration of reproduction cost evidence.

■■ The owner of property subject to a taking is entitled to "just compensation," see RSA 498-A:11, which reflects the property's fair market value at the time of the taking. See 4 P. NICHOLS, THE LAW OF EMINENT DOMAIN § 12.1, at 12-12, § 12.2, at 12-60 (3d ed. rev. 1985) (hereinafter 4 P. NICHOLS). For purposes of valuation in eminent domain cases, this court has recognized that standard appraisal methods include the following: (1) the comparable sales method, which establishes value on the basis of comparison with sales, or sale offerings, of similar properties around the time of the taking; (2) the income method, which establishes value on the basis of capitalized net income; and (3) the reproduction cost method, where the appraiser determines the value of the land without buildings, and then adds the depreciated current cost of reconstructing the buildings, to determine the value of the property as a whole. See Bartage, Inc. v. Manchester Housing Auth., 114 N.H. 203, 204–05, 318 A.2d 152, 153–54 (1974). See generally 4 P. NICHOLS, supra §§ 12.311–.313, at 12-154 to 12-223.

■■■ The reproduction cost method, to which appraisers resort when valuation by the other two methods is not feasible, 4 P. NICHOLS, *supra* § 12.313, at 12-222, 12-223, tends to inflate fair market value by setting a price that often exceeds the level of actual market price negotiations, *Fusegni v. Portsmouth Housing Auth.*, 114 N.H. 207, 210, 317 A.2d 580, 582 (1974). Consequently, to curtail the excessive influence that reproduction cost evidence is likely to have on juries unsophisticated in the methods of real estate appraisal, this court, like courts in other jurisdictions, has recognized the need for limits on the admissibility of such evidence. *Id.* We have stated that evidence of reproduction cost is admissible where the subject building is "unique or has special characteristics not found in other comparable properties," and is "adapted," or well-suited, to the land. *Id.* Once reproduction cost evidence is admissible, moreover, we have indicated that the evidence is not conclusive on the issue of damages, but is merely an "element or circumstance" for the jury to consider with other evidence in arriving at a proper award. *Id.; see Bartage, Inc. v. Manchester Housing Auth.*, *supra* at 205–06, 318 A.2d at 154.

■■ We adhere to the view that reproduction cost evidence is best admitted only in the exceptional case, where the subject building is possessed of such uniqueness that the owner reasonably might be expected to replace it with one of similar character. *See* 4 P. NICHOLS, *supra* § 12.313, at 12-223 to 12-225; *Fusegni v. Portsmouth Housing Auth.*, *supra* at 211–12, 317 A.2d at 582–83 (reproduction cost evidence properly admitted with respect to unique, well-preserved colonial-period house with considerable "intrinsic" value). We see no need, however, to adopt a rigid rule limiting the use of reproduction cost evidence to cases involving indisputably "unique" buildings with special characteristics. Rather, where the trial court, in the exercise of its sound discretion, has permitted the jury to consider reproduction cost evidence in an eminent domain proceeding, we will find no error on review if the record documents either (1) the property's uniqueness, or (2) the presence of a number of alternative safeguards—for example, recourse to the reproduction cost method as a last resort, other appraisals, challenges to the evidence on cross-examination, and instructions to the jury on its duty to consider all of the evidence in determining value—that probably minimize the risk of excessive influence on the jury. *Cf. Trustees &c. Academy v. Exeter*, 92 N.H. 473, 486, 33 A.2d 665, 673 (1943) (where the trier of fact must determine value for property tax purposes, "the normal rule of value" permits consideration of "evidence of all relevant factors").

We now consider the first issue raised by the housing authority. While there is nothing in the record before us that indicates the Reingolds' property was "unique" in a way that would justify the admission of reproduction cost evidence without restriction, the record does disclose the presence of other factors that, in our view, effectively limited the tendency of reproduction cost testimony to inflate the jury's verdict beyond the fair market value of the property. First, we note that the Reingolds' appraiser, Kenney, turned to the reproduction cost method only after determining that he could not use the other standard appraisal methods, and he then confined his application of the method to determining the value of the building "shells" alone.

Beyond Kenney's self-imposed constraints, moreover, were the moderating circumstances of the trial, where MHA offered LaPorte's competing appraisal, Kenney was subject to cross-examination, and the court instructed the jury to consider all evidence, and not any one opinion, in determining value. Given both the circumstances that led Kenney to make what was a limited application of the reproduction cost method, and the existence of alternative safeguards to prevent the jury from being led astray by evidence of reproduction cost, we conclude that the trial court did not abuse its discretion in admitting the reproduction cost evidence or, concomitantly, in instructing the jury that it might consider such evidence.

The housing authority also contends that the trial judge improperly suggested to the jury that the property's physical condition made it unique. We find no merit in MHA's contention, first, because it presupposes a uniqueness requirement that we decline to adopt, for the reasons provided above. In addition, however, our consideration of the instruction reveals the trial judge's purpose, in referring to fire damage and deterioration, to explain the unavailability of comparable sales rather than to describe any uniqueness of the property.

Because we now affirm the result reached below, we need not address the issues raised in the cross-appeal.

*Affirmed.*

THAYER, J., did not sit; the others concurred.